COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 25, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

IN THE MATTER OF THE ADOPTION ) HAMILTON COUNTY
OF SUMMER SIERRA MASSENGALE ) 03A01-9708-CV-00373
                              )
CRAIG MARCEL BULL and         )
DEBRA FAYE BULL               )
                              )
      Petitioners-Appellants  )
                              )
KAREN DENISE MASSENGALE       ) HON. SAMUEL H. PAYNE,
                              ) JUDGE
      Co-Petitioner           )
                              )
      v.                      )
                              )
CHRISTOPHER WAYNE RANDOLPH     )
                              )
      Respondent-Appellee     ) AFFIRMED AND REMANDED


MICHAEL S. PINEDA OF CHATTANOOGA FOR APPELLANTS

CHARLES G. WRIGHT, JR., OF CHATTANOOGA FOR APPELLEE


O P I N I O N


                                    Goddard, P.J.


        In this adoption proceeding, Craig Marcel Bull and his

wife, Debra Faye Bull, appeal a determination of the Circuit

Court for Hamilton County that they had not shown by clear and

convincing evidence that Christopher Wayne Randolph, father of

Summer Sierra Massengale, was guilty of any acts which would

entitle them to have his parental rights terminated.  This

determination, of course, precluded the Bulls from adopting the child.

The Bulls contend that the Trial Court failed to use the proper standard in determining whether an abandonment had occurred, and that the record supports a finding of abandonment under the proper standard. They also insist that Mr. Randolph's parental rights should be terminated under certain provisions of T.C.A. 36-1-113(g), hereinafter set out.

The Trial Judge entered the following memorandum opinion which embraced his findings of fact and conclusions of law:

This cause came on to be heard on April 8, 1997, upon a petition to terminate the parental rights of Christopher Randolph. The petition was filed by Craig and Debra Faye Bull, who have present custody of this minor child by virtue of an order from the Juvenile Court. This Court heard testimony from Craig Bull, Debra Faye Bull, Christopher Randolph, Shirley Massengale, paternal grandmother, Tammy Lane, and Scott Giles and the deposition for proof of the natural mother, Karen Massengale. This petition was filed and accompanied with an adoption petition. The natural mother, Karen Massengale, consented to the adoption and Mr. Christopher Randolph, the natural father of the child, has filed an answer seeking to deny the adoption and gain custody of his minor child. This matter was filed pursuant to T.C.A. 36-1-102 and 36-1-113. Mr. & Mrs. Bull obtained the child, who was born in May 1996, approximately six weeks after her birth. The Bulls picked the child up from the natural mother's grandmother, Shirley Massengale, and have resided since that time at 610 Bivins Road. Mr. & Mrs. Bull have three other children. The Bulls obtained custody of this minor child from the Juvenile Court by virtue of filing a petition along with an affidavit from the natural mother, Karen Massengale, who is presently incarcerated in the penitentiary. In their petition

they alleged in Juvenile Court they did not know the address or whereabouts of the natural father, Christopher Randolph. Christopher Randolph avers he was never notified, was never served, and had no idea where the child was so that he could pay support, or so he could visit. This Court finds that the natural mother, Karen Massengale, knew how to get in touch with Christopher Randolph and they intentionally did not notify him to be at the hearing in Juvenile Court. The testimony revealed that neither Mr. or Mrs. Bull or Karen Massengale even made any attempt to contact or serve the natural father, Christopher Randolph. It is in evidence that Christopher Randolph filed a petition to legitimate this child and even visited the child while it was in the hospital after its birth. He alleges that he paid $50 on several occasions to the mother before the birth and even after the birth. The natural mother denies this and says he only paid $25. The evidence shows that Christopher Randolph has visited with the child at the hospital, has had the child on overnight visitation on two other occasions. Christopher Randolph says he then lost awareness of where the child was and since the natural mother was in the penitentiary he could not find the child until he was served with the Petition for Adoption. Mr. Randolph called the grandmother, Shirley Massengale, and the natural mother, Karen Massengale, and they would not reveal the child's location. Christopher Randolph, the natural father of this child, has served seven years in the penitentiary for rape and the natural mother is now in the penitentiary. When this child was born, the mother was on cocaine and the child even had a cocaine habit, according to their testimony. It is also in evidence that the natural father, Christopher Randolph, supplied clothes and diapers for the child when he knew where she was. The testimony of all the parties in this case was highly conflicting and this Court could not say that the burden of proof to terminate the natural father's rights has been carried. This Court finds that there is not clear and convincing evidence for the grounds of termination of the father's rights as set forth in T.C.A. 36-1-113(c)(1), which requires a finding by the Court of clear and convincing evidence that the grounds for termination of parental rights have been established---or T.C.A. 36-1-113(5)(g) or any of the grounds that are stated in this section. The Court further finds that there is no clear and convincing evidence that the parent has abandoned the child or violated any of the provisions set forth in T.C.A. 36-1-113(7)(B) or (8)(A).

This Court finds that the father is now presently working at Aladdin Industries in Dalton, Georgia and makes approximately $518.40 per week. Although the

natural father, Christopher Randolph, has admitted to having alcohol and drug problems, he says he is now presently clean and has been through a recovery program with AA. At the trial he was clean, well dressed and had complete control of himself and has maintained his job for some period of time. It is in evidence here that the natural father grasped at every opportunity to develop some relationship with his child, and he constantly called the mother, even when she was in the penitentiary, and the grandmother trying to locate the child. Neither natural parent in the case before the Court qualifies as what this Court would call totally responsible parents. Therefore, this child should be left in the custody of Mr. & Mrs. Bull and child support be fixed at $85.00 per week by the natural father, Christopher Randolph, and the case returned to Juvenile Court for the fixing of visitation rights and/or further determination of their temporary custody decree. This Court recommends counseling for all parties and, if necessary, the help of the Department of Human Services in establishing a reasonable visitation schedule. The Tennessee Supreme Court in 1994 stated that a father whose child has been legitimated can defeat adoption by withholding consent to adoption --- See *Nale v. Robertson*, 871 S.W.2d 674 (1994). The Court also held in the case of *O'Daniel v. Messier*, 905 S.W.2d 182 (1995), that a party seeking declaration of abandonment in adoption case must prove his or her case by heightened "clear and convincing evidence" standard to safeguard against wrongful determination of biological parent's parental rights. The Court also held in the case of *Koivu v. Irwin*, 721 S.W.2d 803 (1986) that a finding of possible abandonment in adoption proceeding, or the lack of such finding, on the part of one parent is not to be interpreted as conclusive to the other parent or the ultimate issue.

In considering whether there has been abandonment in this case, the Court has considered such factors as the parent's ability to support the child, the amount of support the parent has provided to the child - or tried to provide, extent and nature of contact between the parent and the child - or his attempts to visit, frequency of gifts on any special occasions - such as gifts of clothes and diapers, and whether the parent voluntarily relinquished custody of the child. This Court finds the natural father did not voluntarily relinquish custody. The length of time the child has been separated from the parent is approximately one year. The home environment and conduct of the parents prior to removal of the child are suspect. The natural father or natural mother, Karen Massengale, had no home environment with this child after its birth, but only

periodic visitation as other people cared for the child.  This Court, although not approving of the natural father's or natural mother's conduct in any manner, cannot say that the father under this proof has evidenced any conduct which evidences a settled purpose to forego all parental duties and relinquish all parental rights to this child by clear and convincing evidence.

T.C.A. 36-1-113, which addresses abandonment as a ground for termination of parental rights, provides as pertinent to this appeal the following:

**36-1-113.  Termination of parental rights.**

. . . .

(g) Termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred.

T.C.A. 36-1-102 defines abandonment as follows:

**36-1-102.  Definitions.--** As used in this part, unless the context otherwise requires:

(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(I) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

. . . .

5

(iii) A biological or legal father has either willfully failed to visit or willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child; provided, that in no instance shall a final order terminating the parental rights of a parent as determined pursuant to subdivision (1)(A)(iii) be entered until at least thirty (30) days have elapsed since the date of the child's birth.

Koivu v. Erwin, 721 S.W.2d 803 (Tenn.App.1986), was relied upon by the Trial Court, which defined abandonment under the statute then in effect, and quoted with approval from earlier cases and American Jurisprudence, as follows (at page 808):

In addressing this question Mr. Justice Brock, speaking for the Court in *Adoption of Bowling v. Bowling*, 631 S.W.2d 386 (Tenn.1982), and quoting from *Wolfenden*, which in turn quotes from American Jurisprudence, said the following (at page 389):

"So, the issue of abandonment should be resolved by the Circuit Court under the following statement of law:

'Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. It does not follow that the purpose may not be repented of, and, in proper cases all parental rights again acquired.... But when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child.' 1 Am.Jur., Adoption of Children, § 42." 349 S.W.2d at 714.

By a 1996 amendment to T.C.A. 36-1-102(1)(G), the Legislature specifically overruled the definition of abandonment contained in Koivu by providing the following:

(G) "Abandonment" does not have any other definition except that which is set forth herein, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition.  Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made.  Decisions of any court to the contrary are hereby legislatively overruled.

While it is true the Trial Judge's opinion relied upon case law repealed by the Legislature, it is clear that it he accredited the testimony of Mr. Randolph and his witnesses rather than those of the mother and her witnesses on the question of whether his conduct was wilful.

As already noted, the Bulls also contend that they are entitled to termination of Mr. Randolph's parental rights under the following Sections of T.C.A. 36-1-113(g):

(8)(A) The parental rights of any person who is not the legal parent or guardian of a child or who is described in § 36-1-117(b) or (c) may also be terminated based upon any one (1) or more of the following additional grounds:

(i) The person has failed, without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the child in accordance with the person's financial means promptly upon the person's receipt of notice of the child's impending birth;

. . . .

(vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity by the child's mother.

7

With regard to Sub-section (i), the record supports the finding of the Trial Court that Mr. Randolph gave certain monies to the mother and offered to pay medical bills, but this offer was refused because these bills were being paid through TennCare.

As to Subsection (vi), there is nothing in the record to show that the mother ever gave "notice of the alleged paternity." Additionally, we note that Mr. Randolph, of his own volition, legitimated the child, as shown by a recommendation of the Referee of the Juvenile Court (which was presumably approved by the Juvenile Judge) dated December 9, 1996, which was after the petition was filed in this Court, but long before the hearing in the Trial Court on April 8, 1997.

It should also be noted that these provisions only apply to one who is not a legal parent, which is defined in T.C.A. 36-1-102(26) to be:

(26) "Legal parent" means:

. . . .

(D) A man who has been adjudicated to be the legal father of the child by any court or administrative body of this state or any other state or territory or foreign country or who has signed, pursuant to §§ 24-7-118, 68-3-203(g), 68-3-302 and 68-3-305(b), an unrevoked and sworn acknowledgment of paternity under the provisions of Tennessee law, or who has signed such a sworn acknowledgment pursuant to the law of any other state, territory, or foreign country.

Finally, we observe that Sub-section (8) uses the precatory word "may," rather than the mandatory one "shall."

We accordingly conclude that--upon deferring to the Trial Judge's judgment as to credibility and upon using the correct standard--the evidence failed to show by clear and convincing evidence that Mr. Randolph was guilty of any acts justifying termination of his parental rights.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for such further proceedings as may be necessary and collection of costs below. Costs of appeal are adjudged against the Bulls and their surety.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Don T. McMurray, J.


_____
Charles D. Susano, Jr., J.

9