**Randy Scott NALE and Wife,
Petitioners–Appellants,**

**and**

**Tennessee Conference Adoption Service,
Intervening Plaintiff–Appellant,**

**v.**

**Darrell Raymont ROBERTSON,
Defendant–Appellee.**

Supreme Court of Tennessee.

Feb. 18, 1994.

Robert D. Tuke, Garry K. Grooms, Kathryn A. Stephenson, Farris, Warfield & Kanaday, Nashville, for petitioners-appellants.

Julia J. Tate, Gracey, Ruth, Howard, Tate & Sowell, Nashville, for defendant-appellee.

Charles W. Burson, Atty. Gen. and Reporter, Dianne Stamey Dycus, Sr. Counsel, for intervening plaintiff-appellant.

## *OPINION*

REID, Chief Justice.

This case presents for determination the competing claims of Darrell Raymont Robertson, the natural father of David, a child born out of wedlock, and Randy Scott Nale and Nancy Jane Bell Nale, who have custody of and seek the adoption of David. The Court of Appeals reversed the judgment of the trial court granting the Nales's petition for adoption and dismissing Robertson's petition for legitimation and remanded the case to the trial court for further consideration of the petition for legitimation. This Court finds that Robertson's petition for legitimation should be granted and the Nale's petition for adoption and the petition to terminate parental rights should be dismissed.

Prior to the birth of the child, Robertson told the expectant mother and her sister that he wanted custody of the baby if the mother should choose not to retain custody. At that time, the mother, who was "pretty sure" Robertson was the father, said she would never give the child up for adoption. Robertson was not requested to and did not provide any support for the expectant mother during the pregnancy.

David was born October 26, 1990. Upon being advised by the mother's sister of the child's birth, Robertson went immediately to the hospital, but he was not allowed to see the child. Two days after the child was born,

he was surrendered for adoption by the mother to the Tennessee Conference Adoption Service, the intervening petitioner, and placed by the Conference with the Nales. Robertson did not receive notice of the surrender or placement.

On October 31, 1990, when the child was five days old, Robertson, pursuant to the provisions of T.C.A. § 36–2–209, filed with the Department of Human Services putative father registry a "notice of intent to claim paternity" of the child. After filing the notice, Robertson, upon inquiry with the Department was told, erroneously however, that he would be contacted in the event the child should be surrendered for adoption. The Conference did not learn that Robertson had filed with the registry a notice claiming paternity until more than three months later, in February 1991. The Conference immediately notified the Nales of the putative father's identity; however, the Conference's single letter to Robertson advising that it had custody of the child was returned undelivered.

On March 28, 1991, the Conference filed a petition in juvenile court to terminate Robertson's paternal rights on the ground that Robertson had abandoned the child. Robertson first learned that the Conference had custody of the child in May 1991, when he received from the clerk of the juvenile court a copy of the Conference's petition. At that time, the child was seven months old. Immediately upon learning that the Conference had custody of the child, Robertson petitioned the juvenile court for an order allowing him to visit the child, which petition the Conference opposed. On May 21, 1991, the Conference gave its consent for the adoption of the baby by the Nales. On June 4, 1991, Robertson responded to the petition to terminate his parental rights and also filed with the juvenile court a petition to legitimate the child.

On August 20, 1991, the Nales filed in the circuit court a petition for adoption seeking the termination of Robertson's parental rights, again on the ground of abandonment. At that time, there had been no hearing in juvenile court on the Conference's petition to terminate Robertson's parental rights or

Robertson's petition to have himself declared the father of the child.

On August 30, 1991, Robertson petitioned the circuit court for an order allowing visitation with the child. On September 13, 1991, he filed a response to the Nales's petition to adopt and also a petition seeking to legitimate the child. On September 18, 1991, the circuit court allowed the Conference to intervene on behalf of the Nales and denied Robertson's petition for visitation privileges.

Beginning in October 1991, Robertson voluntarily sent money to the Nales for the support of the child. He also sent presents, and he tried, though unsuccessfully, to be allowed to visit with the child.

On June 5, 1992, the Nales amended their petition for adoption, withdrawing the charge that Robertson had abandoned the child and asserting that adoption was in the child's best interest. An order was entered by the court stating that the determinative issue was the child's best interest and limiting proof to that issue.

On July 24, 1992, the circuit court found the adoption by the Nales to be in David's best interest, and, on August 13, 1992, an order was entered granting the petition for adoption and dismissing the petition for legitimation. The child at that time was almost 22 months old.

On appeal, the Court of Appeals found that the trial court had erred in failing to dispose of Robertson's petition for legitimation before considering the petition for adoption, and ordered a remand for that purpose.

After the Court of Appeals rendered its opinion, the parties entered into an agreed order allowing Robertson certain visitation privileges with David.

The Nales insist that T.C.A. § 36–1–111 allows the adoption of a child born out of wedlock if the adoption is in the child's best interest, notwithstanding a pending legitimation proceeding, the lack of consent of the natural father, and the absence of an adjudication of abandonment. Robertson asserts that the provision of T.C.A. § 36–1–111, excluding as a necessary party to adoption proceedings the natural father of a child born out of wedlock and not legitimated, is a deni-

al of constitutional due process. The following provisions of the statute are relevant to this case:

(a) In the case of a child born out of wedlock and when the child has not been legitimated prior to the initiation of proceedings for the adoption of the child, the natural father of the child shall not be a necessary party to nor shall the natural father have a right to notice of the adoption proceedings except as provided in subsection (b).

(b) Except as provided in subsection (c), the following persons shall be entitled to written notice of a proposed adoption in either a separate proceeding or in the adoption proceeding and shall be given the opportunity to present proof as to the best interests of the child; provided, that such notice and opportunity to be heard shall not prevent a court from entering a decree of adoption if it finds adoption to be in the best interest of the child regardless of whether or not the natural father of a child born out of wedlock consents or is determined to have abandoned the child.

(1) Any person adjudicated by a court in this state to be the father of the child prior to the initiation of proceedings for the adoption of the child;

.    .    .    .    .

(3) Any person who has filed an unrevoked notice of intent to claim paternity or an acknowledgement of paternity with the putative father registry pursuant to chapter 2, part 2 of this title prior to the initiation of proceedings for the adoption of the child; provided, that such person has not waived the right to notice by failing to timely notify the registry of any change of address;

.    .    .    .    .

(8) Any person who has filed a petition to legitimate the child in a court in this state.

■ The Court of Appeals held correctly that a petition to legitimate a child filed prior to an adoption petition must be decided, and decided adversely to the putative father, before the adoption petition may be considered. *See In re Adoption of Dearing,* 572 S.W.2d 929, 932 (Tenn.App.1978); *In re Adoption of Hutto,* 777 S.W.2d 353, 354 (Tenn.App.1989). The parent's right to have the legitimation issue considered prior to and separate from the adoption is significant procedurally and substantively.

■ A father whose child has been legitimated can defeat an adoption by withholding his consent to the adoption, but a father whose child has not been legitimated may, at most, present proof regarding the child's best interest. T.C.A. § 36-1-111(b). Also, in the legitimation proceeding, the essential issue is the fitness of the father as a parent; while, in the adoption proceeding, the issue is the best interest of the child. These rights of a father cannot be defeated by the filing of a petition for adoption prior to the adjudication regarding legitimacy.

The Court of Appeals characterized the burden of proof upon a natural parent to sustain a petition for legitimation as a "relatively easy burden of persuasion." The court also stated:

In considering the application for legitimation, the Trial Court should determine:

1. Whether the applicant is in fact the natural father of the child.

2. Whether the reasons stated for legitimation exist.

3. Whether there is any justifiable reason why the legitimation should not be ordered. *Such reasons should be confined to those which would support a termination of parental rights.* (Emphasis added.)

The Court of Appeals, in an appropriate response to the Nales' contention that the determinative issue was David's best interest, stated:

Any child's interest will be served by being raised by two loving parents in a happy home with sufficient resources at hand to help the child realize his or her full potential. However, visions of the idealized traditional nuclear family must give way to the stark reality that more children are born out of wedlock every year and that more and more children are being raised in single parent families. That oth-

ers may be better parents or may be able to raise a child in more affluent surroundings are not sufficient reasons in and of themselves to deny a petition to legitimate an infant or young child. A Trial Court may not deny a legitimation petition simply because persons other than the biological father wish to adopt the child. Biological bonds should not be so lightly brushed aside, and the courts should not be given a license to engage in social engineering by invoking the "best interests of the child." Legitimation petitions should be denied only when the court concludes that permitting a father to legitimate his biological child will affirmatively harm the child.

*See e.g., Hodgson v. Minnesota,* 497 U.S. 417, 452, 110 S.Ct. 2926, 2946, 111 L.Ed.2d 344 (1990) ("a state interest in standardizing its children and adults, making the 'private realm of family life' conform to some state-designed ideal, is not a legitimate state interest at all").

■ Parents, including parents of children born out of wedlock, have a fundamental liberty interest in the care and custody of their children under both the United States and Tennessee Constitutions. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Hawk v. Hawk,* 855 S.W.2d 573 (Tenn.1993). However, this right is not absolute and the State may interfere with parental rights if there is a compelling State interest. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Hawk v. Hawk,* 855 S.W.2d at 579. The United States Supreme Court has addressed in several cases the issue of a father's liberty interest in his relationship with a child born out of wedlock. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).

In *Stanley,* the United States Supreme Court held unconstitutional an Illinois statute that conclusively presumed every unwed father to be an unfit person to have custody of his children. In that case, the natural father had lived with the children and their mother intermittently for 18 years. There was nothing in the record to show that Stanley had neglected the children. *Stanley v. Illinois,* 405 U.S. at 655, 92 S.Ct. at 1214. The Supreme Court recognized that an unwed father who has a subsisting relationship with his child has a fundamental liberty interest in that relationship and, absent a compelling interest, a state may not interfere with such relationship. *Id.* at 651–52, 92 S.Ct. at 1212–13.

In *Quilloin,* the Supreme Court defined the issue more precisely as whether under the circumstances of that case, the father's interests were adequately protected by a "best interest of the child" standard. *Quilloin v. Walcott,* 434 U.S. at 254, 98 S.Ct. at 554. In *Quilloin,* the Court upheld the denial of a petition to legitimate an 11–year–old child filed by an unwed father based on the best interest of the child. The petition to legitimate was not filed until after a petition to adopt had been filed by the child's stepfather. Under Georgia law, an unwed father who had not legitimated his child was not permitted to object to an adoption. The Court emphasized that the natural father had never sought actual or legal custody of the child, and had never assumed any significant responsibility with respect to the supervision, education, protection, or care of the child. Thus, the Court held that the father had not grasped the opportunity to assert his constitutional right and due process did not require anything more than a finding that the adoption and denial of legitimation were in the "best interests of the child." *Quilloin v. Walcott,* 434 U.S. at 255, 98 S.Ct. at 555. This finding, in effect, established that the fundamental liberty interest is inchoate and may be restricted unless developed by the father. *See also Caban v. Mohammed,* 441 U.S. at 389, n. 7, 99 S.Ct. at 1766, n. 7.

In *Caban,* the Supreme Court held unconstitutional a New York statute which permitted an unwed mother to prevent an adoption by withholding her consent, but did not permit an unwed father, who had participated in the rearing of the child, to prevent adoption by withholding consent. The Court found that the natural father had a substantial

relationship with his children, ages 6 years and 4½ years, at the time of the adoption proceedings. *Id.* at 387, 99 S.Ct. at 1765. The father had visited the children regularly. The Court held that, in this situation, the state did not have a compelling interest in treating an unwed father differently than an unwed mother and that, therefore, this statute violated the equal protection clause. *Id.* at 394, 99 S.Ct. at 1769. While the Court recognized that there is a difference in maternal and paternal roles as to newborn infants which may justify different treatment, it noted that this generalization becomes less acceptable as a basis for legislative distinctions as the age of the child increases. *Id.* at 388–89, 99 S.Ct. at 1765–66. Thus, a father who has admitted his paternity and has established a substantial relationship with the child is entitled to constitutional protection. *Id.* at 393, 99 S.Ct. at 1768. However, the Court found that the equal protection clause would not preclude a state from withholding the privilege of objecting to an adoption by an unwed father who has never come forward to participate in the rearing of his child. *Id.* at 392, 99 S.Ct. at 1768.

In *Lehr,* the Supreme Court upheld the constitutionality of a New York statute which did not require notice of an adoption to be given to an unwed father who was not registered as a putative father even though the state had actual notice of his existence and whereabouts. Once again, the United States Supreme Court distinguished between an unwed father who has established a substantial relationship with his child and one who has not. The Court noted that the mere existence of a biological link does not merit constitutional protection. *Lehr v. Robertson,* 463 U.S. at 262, 103 S.Ct. at 2993–94. The Court further stated:

> The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automati-

cally compel a State to listen to his opinion of where the child's best interests lie. *Id.*

The Court noted in *Lehr* that New York had provided a statutory scheme to protect an unwed father's interest in assuming a responsible role in the future of his child. As in T.C.A. § 36–1–111, the New York statute provided for notice of adoption to putative fathers which included putative fathers who had registered with the state. The Court did not find this procedure to be arbitrary. Therefore, the Court found that there was no violation of the due process clause. *Lehr v. Robertson,* 463 U.S. at 264–65, 103 S.Ct. at 2994–95.

These Supreme Court cases were discussed by the Court of Appeals in *In re Adoption of Hutto,* 777 S.W.2d 353 (Tenn. App.1989):

> The United States Supreme Court declared in *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) that an unwed father must take affirmative steps to develop a responsible relationship with his child before his interest in the child is sufficient to acquire constitutional due process protection. The Court stressed the distinction between a "mere biological relationship and an actual relationship of parental responsibility." 463 U.S. at 259, 103 S.Ct. at 2992.

> The *Lehr* court distinguished the parent-child relationships in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) and *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), by stating:

>> The difference between the developed parent-child relationship that was implicated in *Stanley* and *Caban,* and the potential relationship involved in *Quilloin* and this case, is both clear and significant. When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," *Caban,* 441 U.S. at 392, 99 S.Ct. at 1768, his interest in

personal contact with his child acquires substantial protection under the Due Process Clause.

463 U.S. at 261, 103 S.Ct. at 2993.

*Id.* at 354–55.

The "law of the land" provision of Article I, Section 8 of the Tennessee Constitution provides the same protection as the "due process of law" provision of the Fifth and Fourteenth Amendments to the United States Constitution. *Daugherty v. State*, 216 Tenn. 666, 393 S.W.2d 739, 743 (1965). This Court found in *Davis v. Davis*, 842 S.W.2d 588, 600 (Tenn. 1992), that "there is a right of individual privacy guaranteed under and protected by the liberty clauses of the Tennessee Declaration of Rights." This constitutional right of privacy includes parental rights.

> In light of this right to privacy, we believe that when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit.

*Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993); *see also Broadwell v. Holmes*, 871 S.W.2d 471 (Tenn.1994).

The Nales' position that this Court in *Hawk* limited the protection of parental rights to "an intact, nuclear family with fit parents" is untenable. The natural father prevailed in *In re Adoption of Hutto, supra*, in which the contest was between the father, who had filed a petition for legitimation, and the natural mother and her husband, who had filed a joint petition to adopt. This Court joins the Court of Appeals, which, in this case, stated:

> No reason occurs to this Court why a fit parent should be denied the privilege of parenthood merely because of birth out of wedlock. As previously stated, the denial of privilege of parenthood is based upon termination for unfitness.

■ The conclusion is that the state and federal constitutions require that the natural father's parental rights be determined before the court may proceed with the issue of adoption. Consequently, that portion of T.C.A. § 36–1–111 that would allow the court to enter a decree of adoption based on the best interest of the child, without a prior judicial termination of the father's parental rights pursuant to T.C.A. § 37–1–147 *et seq.*, is constitutionally invalid.

■ Even though the Court of Appeals properly found that the trial court erred in failing to consider the petition to legitimate, the Court of Appeals, on this record, erred in remanding the case to the trial court for further consideration of Robertson's petition for legitimation. The record shows that Robertson has grasped every opportunity to develop a substantial relationship with the child, and has accepted responsibility for the child's care and custody. The record shows that Robertson has made every reasonable effort to establish a personal as well as legal relationship between himself and his son. He, therefore, has established a fundamental liberty interest in the child and legitimation cannot be denied except upon proof that would support the termination of parental rights under T.C.A. § 37–1–147(d). The Nales acknowledge, and the record confirms, that Robertson did not abandon the child and that he is a fit person to be a parent. Consequently, Robertson is entitled to an order of legitimation.

The Court recognizes that, in this case as in many others, resolution of the legal issues does not mediate the harm experienced by the parties. We, outside our role as judges, can only implore the healing balm of love which all the parties obviously have bestowed upon David.

Judgment will be entered granting the petition for legitimation and dismissing the petition for adoption. The case is remanded to the trial court for the entry of an order whereby custody will be transferred to Robertson over a period of time and in the manner that is determined to be the least disruptive to the child.

The costs are taxed equally against Mr. and Mrs. Nales and the Tennessee Conference Adoption Service.

DROWOTA, O'BRIEN and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.