# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**September 23, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

IN RE:
LAURA ANN CAMPBELL

)
)
)
)
)
)
)
)
)

Perry Juvenile
No. 165

Appeal No.
01A01-9802-JV-00086


APPEAL FROM THE JUVENILE COURT
FOR PERRY COUNTY
AT LINDEN, TENNESSEE


THE HONORABLE CLOVIS G. PARNELL, JUDGE


For Plaintiff/Appellant:

William Landis Turner
KEATON, TURNER & SPITZER
Hohenwald, Tennessee

For Defendant/Appellee:

No Appearance


# VACATED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

**O P I N I O N**

This appeal involves a biological father's attempt to gain custody of his eleven-year-old daughter. Apparently ignoring the biological father's petition for custody, the Perry County Juvenile Court placed the child in the custody of her former stepfather who had recently divorced her biological mother. The father asserts on this appeal that the juvenile court failed to give him an opportunity to present evidence to support his petition for custody and also failed to employ the proper evidentiary standard in deciding to award custody to his daughter's former stepfather. We vacate the juvenile court's custody order because the natural father was not afforded a hearing on his custody petition and because the juvenile court did not make the requisite findings of fact to support awarding custody of a child to someone other than a biological parent.

**I.**

Patricia King and Timothy Campbell are lifelong residents of Lobelville and have known each other for many years. Ms. King runs a carpet cleaning business, while Mr. Campbell is in the grocery business. Ms. King discovered that she was pregnant with Mr. Campbell's child in late 1986 or early 1987, but before the child was born, she married David Keith Leegan who was also from Lobelville. Laura Ann Campbell was born on June 30, 1987.

Ms. King and Mr. Leegan began to raise Laura together, and Mr. Campbell had little, if any, contact with the child during her early years. In June 1988, Ms. King filed a paternity action against Mr. Campbell in the Perry County Juvenile Court. Mr. Campbell did not contest the petition and declined to pay for the required blood tests. Following a hearing in July 1988 which Mr. Campbell declined to attend, the juvenile court determined that Mr. Campbell was Laura's father and directed Mr. Campbell to begin paying Ms. King $200 per month in child support. Mr. Campbell did not request visitation rights, and so Laura continued to live with Ms. King and Mr. Leegan without establishing a relationship with Mr. Campbell.

Mr. Campbell soon became delinquent with the child support payments, and in October 1988, the District Attorney General filed a petition to hold him in contempt. In January 1989, the juvenile court found Mr. Campbell in contempt for failure to pay child support. The juvenile court also sentenced Mr. Campbell to six months in jail, but suspended the sentence on the condition that Mr. Campbell continue to pay Ms. King $150 per month in child support.

Ms. King and Mr. Leegan had a child of their own, Rebecca Lynn Leegan, in October 1989. They lived together with the two girls until they separated in March 1995. Ms. King and Mr. Leegan were divorced in the Chancery Court for Perry County in November 1995. The chancery court awarded them joint custody of Rebecca but designated Ms. King as the primary custodian. Thus, Ms. King and her two daughters continued to live together in Lobelville.

In July 1997, the two girls began living with Mr. Leegan rather than Ms. King. Ms. King asserted that she turned the children over to Mr. Leegan because they would be safer living with him. Mr. Leegan stated that Ms. King was not a suitable parent and that the children appeared dirty and disheveled while they were under her care. Thus, during the summer and fall of 1997, the children lived part of the time with Mr. Leegan and part of the time with Mr. Campbell.[1] As Ms. King retreated increasingly from her parental duties, Laura's custody became a heated issue between Mr. Leegan and Mr. Campbell.

In August 1997, Mr. Campbell filed a petition in the Perry County Juvenile Court seeking custody of Laura. He alleged that Ms. King was no longer a suitable custodian for their daughter because she had become involved with drugs and because she exposed their daughter to strangers by entertaining visitors at her home at unusual hours. After he filed the petition, Mr. Campbell explained to Department of Human Services investigators that he had had no contact with Laura during the first years of her life because he was not convinced that she was his child and because he was unable to pay child support. However, he also insisted that he had now developed a relationship with Laura and that he and his mother could provide her with a more suitable environment than Ms. King could provide.

In September 1997, the District Attorney General filed a second petition seeking to hold Mr. Campbell in contempt for failure to pay child support. By this time, the amount of Mr. Campbell's unpaid child support had increased to $15,900. In response to this petition, the juvenile court entered an order directing Mr. Campbell to appear on October 28, 1997 to show cause why he should not be held in contempt of court for failing to pay child support.

In the meantime, Mr. Leegan began taking steps to consolidate his position as the custodian of both Rebecca and Laura. On October 15, 1997, he filed a petition in the juvenile court seeking custody of Laura. On October 27, 1997, he and Ms. King filed an agreed order in the chancery court amending their divorce decree to award him sole custody of Rebecca.

The juvenile court held a hearing on October 28, 1997, although the record does not disclose what transpired at the hearing. There is no transcript of the proceeding, but apparently no testimony was heard, and no evidence was presented. At the conclusion of the hearing, the juvenile court awarded Mr. Leegan sole custody of Laura with visitation rights to both Ms. King and Mr. Campbell. The trial court also awarded a $16,804 judgment against Mr. Campbell and in favor of Mr. Leegan for delinquent child support. There is no indication in the record that the juvenile court considered or disposed of Mr. Campbell's custody petition.[2]

---

[1]The appellate record contains no information concerning when or under what circumstances Mr. Campbell and his daughter began developing a father-daughter relationship.

[2]The absence of an explicit disposition of Mr. Campbell's custody petition coupled with the
(continued...)

Since the hearing, Laura has lived in Lobelville with Mr. Leegan and her half-sister. Mr. Leegan's girlfriend and her son and two daughters also live in the same household. Even though they have had notice of this appeal, neither Mr. Leegan nor Ms. King have filed a brief nor made any other sort of appearance in this case.

## II.

Mr. Campbell asserts that the order awarding custody of Laura to Mr. Leegan cannot stand for two related reasons. First, he argues that he was not given adequate notice that the October 28, 1997 hearing would deal with custody issues. Second, he argues that the juvenile court employed the wrong standard for determining whether Laura's custody should be awarded to Mr. Leegan rather than to him.

## A.

Biological parents have a fundamental, constitutionally protected interest in maintaining their relationship with their children. *See Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996); *In re Adoption of Female Child (Bond v. McKenzie)*, 896 S.W.2d 546, 547 (Tenn. 1995); *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994). Accordingly, both Tenn. Const. art. I, §8 and U.S. Const. amend. XIV afford biological parents faced with the possibility of losing this relationship with important due process rights. Specifically, these parents are entitled to a hearing on adequate notice, *see Stanley v. Illinois*, 405 U.S. 645, 649, 92 S. Ct. 1208, 1211 (1972), and legal representation when the circumstances require it. *See Lassiter v. Department of Social Servs.*, 452 U.S. 18, 31-32, 101 S. Ct. 2153, 2162 (1981); *State ex rel. T.H. v. Min*, 802 S.W.2d 625, 626 (Tenn. Ct. App. 1990).

These rights extend to parents of nonmarital children who have taken affirmative steps to develop a relationship with their child. *See Petrosky v. Keene*, 898 S.W.2d 726, 728 (Tenn. 1995); *Nale v. Robertson*, 871 S.W.2d at 678. Thus, if a biological parent has established a relationship with a nonmarital child, the State may not interfere with the parent's rights unless continuing the relationship poses a substantial threat of harm to the child. *See Petrosky v. Keene*, 898 S.W.2d at 728; *Hawk v. Hawk*, 855 S.W.2d 573, 579-582 (Tenn. 1993). Accordingly, in a custody dispute between a biological parent and a non-parent, the biological parent should not be deprived of custody of his or her child unless there has been a finding, after appropriate notice and an opportunity to be heard, that awarding custody of the child to the biological parent will pose a threat of substantial harm to the child. *See In re Adoption of Female Child*, 896 S.W.2d at 548; *Hawk v. Hawk*, 855 S.W.2d at 579-582. Only after a court has found that a threat of substantial harm to the child exists

_____

[2](...continued)
order granting Mr. Leegan's custody petition might support an inference that the trial court denied Mr. Campbell's petition. We need not rely on this inference in this case because the present record supports the conclusion that the procedure employed by the juvenile court was fatally defective.

may the court engage in the general "best interest of the child" evaluation for determining custody. *See In re Adoption of Female Child*, 896 S.W.2d at 548; *Hawk v. Hawk*, 855 S.W.2d at 579-582.

## B.

The limited record in this case contains some evidence that Mr. Campbell has established a parental relationship with Laura. He has, therefore, at least a colorable claim to Laura's custody and the right to notice and an opportunity to be heard before the juvenile court fashions a custody arrangement for her. While Mr. Campbell received notice that the October 28, 1997 hearing would involve his delinquent child support, we can find no indication that he was put on notice that the juvenile court also intended to adjudicate Laura's custody. Mr. Leegan's petition for custody did not contain a certificate showing that Mr. Campbell had received a copy of the petition, and the record contains no show cause order or other notice to Mr. Campbell that the October 28, 1997 hearing would involve custody in addition to child support.

Because he did not receive notice that custody issues would be adjudicated at the October 28, 1997 hearing, Mr. Campbell was not prepared to present evidence supporting his claim for custody of Laura. Even if he had been prepared to present this evidence, there is some indication in the record that the juvenile court would not have considered it because of the agreement between Mr. Leegan and Ms. King to give custody of Laura to Mr. Leegan. This was error. The juvenile court should have given Mr. Campbell notice that Laura's custody was at issue. It should also have afforded Mr. Campbell an opportunity to prove that he had established a sufficient parental relationship with Laura that would entitle him to be the child's custodian and that awarding him custody of his daughter would not expose her to a substantial risk of harm.

The only remedy for the lack of notice and an opportunity to be heard is to vacate the judgment and remand the case for a proper hearing. If, after hearing all the proof, the juvenile court determines either that Mr. Campbell has not established a parental relationship with Laura or that awarding him custody would expose Laura to a substantial risk of harm, the trial court may determine that Laura's interests would be served best by awarding custody to Mr. Leegan.

## III.

We vacate the order awarding custody of Laura Ann Campbell to David Leegan and remand the case to the juvenile court for further proceedings consistent with this opinion. We tax the costs of this appeal, jointly and severally, to Patricia King and David Leegan for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____  -6-
HENRY F. TODD,
PRESIDING JUDGE, MIDDLE SECTION


_____
WILLIAM B. CAIN, JUDGE