# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**February 11, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

STATE OF TENNESSEE,  )
DEPARTMENT OF HUMAN SERVICES,  )
  )
    Petitioner/Appellee,  )
  )    Appeal No.
VS.  )    01-A-01-9711-JV-00662
  )
RALONDA NYOKA WRIGHT SMITH  )    White Juvenile
WYLIE, CRAIG DOUGLAS WYLIE  )    No. 1016
and JOHNNY SMITH,  )
  )
    Respondent/Appellant,  )
  )
IN THE MATTER OF:  )
Kristalena Kay Smith, D.O.B. 5/04/89  )
Justin Thomas Wylie, D.O.B. 12/06/92  )
  )
Children Under Eighteen (18) Years of Age  )

APPEALED FROM THE JUVENILE COURT OF WHITE COUNTY
AT SPARTA, TENNESSEE

THE HONORABLE GARY W. DODSON, JUDGE

JOHN KNOX WALKUP
Attorney General and Reporter

DOUGLAS EARL DIMOND
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0499
    Attorney for Appellee

D. MICHAEL KRESS II
8 East Bockman Way
Sparta, Tennessee 38483
    Attorney for Appellant Ralonda Nyoka Wright Smith Wylie

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
CAIN, J.
COTTRELL, J.

# O P I N I O N

The Juvenile Court of White County terminated a mother's parental rights to two small children. The only question in this appeal is whether the State proved by clear and convincing evidence the statutory grounds for termination. We affirm the judgment of the trial court.

## I.

Kristalena K. Smith was born on May 4, 1989 to Ralonda Wright Smith and Johnny Smith. Justin Thomas Wylie was born out of wedlock on December 6, 1992 to Ralonda Wright Smith and Craig Douglas Wylie. Ms. Smith and Mr. Wylie later married.

In February of 1994 Ms. Wylie took the children to a babysitter and told the babysitter that she would return for the children by 9:00 or 10:00 p.m. By the afternoon of the next day Ms. Wylie had not returned and she could not be reached. She had left the name of a relative, but that person refused to become involved. The Department of Human Services (DHS) took the children and filed a petition for temporary custody. The petition alleged that the children had also been sexually abused.

On February 22, 1994 the Juvenile Court of White County held a hearing on the petition and found that the best interests of the children required removal from the parents' custody and that there was no less drastic alternative. Ms. Wylie was represented at the hearing by retained counsel. There is no transcript in the record from that hearing.

In March of 1995 the children were placed with their maternal grandmother. Ms. Wylie showed up occasionally. She lived with Mr. Wylie in Tennessee, Texas, and Florida, but sometimes she was completely out of touch with the children and their grandmother for long periods of time. On the occasions when Ms. Wylie did show up, she did not take any interest in the children. The grandmother sometimes refused to let her daughter see her children because she upset them. In September of 1995 the grandmother asked DHS to take the children back and expressed a hope that the children would never be returned to Ms. Wylie.

For part of the time her children were in state custody, the mother lived with a man by the name of Cooper. Cooper's mother testified that the children visited with Ms. Wylie and Mr. Cooper, but that the children were neglected, not fed, and scarcely had clothes to wear. Ms. Wylie's sister rescued the children and took them back to their grandparents.

Ms. Wylie would not take advantage of any of the state services offered to help her gain parenting skills. Neither would she comply with a plan of care developed for her and the children. She disappeared for most of one year before one of the state workers located her in jail just three months before the final hearing in this case. For the seven months up to the date of the final hearing, Ms. Wylie had visited her children only six times.

Ms. Wylie testified that she was now in a stable environment, living in subsidized housing with enough room for the children. She said she had a job caring for an elderly person and could care for the children. Her family members, including her mother who had had such reservations about the children ever being returned to Ms. Wylie, testified that she had changed, that she was divorcing Mr. Wylie, and that she could provide a home for the children.

At the end of the hearing the juvenile judge found clear and convincing proof of the grounds for termination, but he deferred for sixty days a decision on whether termination would be in the children's best interests. After a hearing on September 23, 1997 the juvenile judge entered another order containing the following findings and conclusions:

> The Court further finds upon clear and convincing evidence that it is in the best interest of the children to terminate parental rights; that the conditions that led to the children's removal still exist or other conditions exist which would in all probability subject the children to further neglect or abuse if returned home; there is little likelihood that these conditions will be remedied at an early date so that the children could be returned to the Defendants in the near future; that the continuation of the parent/child relationship greatly diminishes the children's chances of early integration into a stable and permanent home.

## II.

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). That right, however, may be surrendered by parents who engage in acts that pose a threat of substantial harm to the children. *Nale v. Robertson*, 871 S.W.2d 674 (Tenn. 1994). The legislature has drawn some guidelines to balance the parental rights against the state's interest in preventing harm to the children. Under the statutory scheme a court may take a dependent and neglected child out of the parent(s)' custody to protect the "physical, mental, and moral welfare of the child." Tenn. Code Ann. § 37-1-130(a). In appropriate cases, the state then provides a range of services to the parents and the children to try to reunite the family. Tenn. Code Ann. § 37-2-403. When all else fails, the court may permanently terminate a parent's parental rights.

The procedure for termination has been described in some detail by the legislature in Tenn. Code Ann. § 36-1-113. The parts relevant to this case are:

(c)     Termination of parental or guardianship rights must be based upon:

> (1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

> (2)     That the termination of the parent's or guardian's rights is in the best interests of the child.

> > \*        \*        \*

(g)     Termination of parental or guardianship rights may be based upon any of the following grounds:

> > \*        \*        \*

> (2)     There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

> (3)(A)  The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

> > (i)     The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) or guardian(s), still persist;

> > (ii)    There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent(s) or guardian(s) in the near future; and

> > (iii)   The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

The juvenile judge's findings and conclusions track the statutory requirements. After reviewing the transcript of the July 29, 1997 hearing, we concur with the juvenile judge. The record shows that for more than three years Ms. Wylie showed a remarkable lack of concern for her children. She utterly failed to comply with her plan of care. For long periods of time she was out of touch with the state workers who were supposed to monitor her progress. She continued to live with the person suspected of abusing her infant son. Three months before the July 29, 1997 hearing she was in jail on a contempt of court charge for failing to comply with the court's order in a DUI conviction.

The failure to terminate parental rights would prolong the delay in finding a stable home for the children.

The judgment of the trial court is affirmed and the case is remanded to the Juvenile Court of White County for any further proceedings necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM B. CAIN, JUDGE

_____
PATRICIA J. COTTRELL, JUDGE

- 6 -