IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 24, 2001 Session

# STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. S.S.S., J.S., AND K.S.

## IN THE MATTER OF:  C.S., D.O.B. 01/26/91
### C.S., D.O.B. 09/26/94
## CHILDREN UNDER EIGHTEEN (18) YEARS OF AGE

An Appeal from the Juvenile Court for Putnam County
No. 100491     John Hudson, Judge

_____

No. M2000-01248-COA-R3-CV - Filed July 13, 2001

_____

This case involves the termination of parental rights. The trial court terminated the parental rights of the mother in her son and daughter, and those of the children's two separate fathers. The mother and father of the daughter had been convicted of aggravated child abuse in criminal court. The mother filed a petition for post-conviction relief, which was denied, and she appealed to the Court of Criminal Appeals. Both the mother and the father of the daughter appeal the termination of their parental rights. The mother argues that her conviction for child abuse was not sufficient to satisfy the statutory grounds for termination of parental rights because it was on appeal, and the father argues that there was no direct evidence presented that he abused the children. We affirm, finding ample evidence to support the termination of both parents' rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

William D. Birdwell, Cookeville, Tennessee, for the appellant, S.S.S.

Harvey Douglas Thomas, Algood, Tennessee, for the appellant, J.S.

Paul G. Summers, Attorney General and Reporter, Elizabeth C. Driver, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

In this case, the trial court terminated the parental rights of S.S.S. ("Mother"), in her two children, her son, C.S., born January 26, 1991, and her daughter, C.S., born September 26, 1994. The trial court also terminated the parental rights of J.S. ("Father"), father of the girl and step-father to the boy. K.S., the father of the boy, never appeared to contest the termination of his parental rights, and the trial court terminated his parental rights by default judgment. His parental rights are not at issue in this appeal.

The boy and girl were first removed from Mother and Father's custody in June 1997, after the boy was found home alone, dressed only in his underwear, his legs handcuffed, his arms bound with duct tape, and his mouth gagged with the hard plastic cover of a baby bottle held in place with duct tape. Both of the boy's eyes were beaten and nearly swollen shut. Mother admitted that she bound and gagged her son and left him home alone while she and Father went to work. The Department of Children's Services ("DCS") removed both children from Father's custody as well as Mother's custody because Father was alleged to have witnessed Mother's abuse of her son but did nothing to protect him.

Immediately after the boy was found bound and gagged, both Mother and Father were arrested and charged with child abuse. In September 1998, Mother and Father pled guilty to aggravated child abuse, and each were sentenced to twelve years' imprisonment. Mother filed a petition for post-conviction relief, which was denied, and she appealed the denial of her petition to the Court of Criminal Appeals. Father did not file a petition for post-conviction relief.

In December 1998, DCS filed a petition to terminate the parental rights of Mother and Father. As statutory grounds for the termination of their parental rights, the petition alleged that Mother and Father had abandoned the children, that they had not fulfilled the requirements under the permanency plans developed by DCS, that the children had been removed from Mother and Father's custody for a period of six months and the conditions leading to their removal still existed, that Mother and Father had committed severe child abuse as defined by Tennessee Code Annotated § 37-1-102 (b)(21) (Supp. 2000), that Mother and Father had been sentenced to more than two years' imprisonment for conduct against the children, and that Mother and Father had been sentenced to more than ten years imprisonment while both children were under eight years of age.

On July 20, 1999, a bench trial was held. At trial, DCS offered as part of its proof the convictions of Mother and Father for aggravated child abuse and their resulting prison sentences of twelve years each. Mother objected on the basis that she had appealed the denial of her petition for post-conviction relief. Father objected on the basis that the conviction did not represent the actual judgment of the criminal court, but rather was based on Father's "best interest" guilty plea. Mother and Father motioned the trial court to exclude the proof, and the trial judge reserved his ruling until after the parties submitted written briefs.

Lori Murphy, the children's foster mother, testified at trial. Both children had been living in her home for approximately two years. She described the boy's condition when he came to live with her and her husband:

> Severely, severely bruised. He couldn't hardly open his eyes. You couldn't tell his eye whites from red. He was skin and bones. Scars and scratches and rope burns on his neck, and tape still stuck on him. The white stuff from the tape was still on his hands and feet. Just bad.

Murphy stated that the boy told her that both Mother and Father physically abused him. The son told her that Mother and Father punished him by making him eat dog food, that they pushed him down steps, that Mother threw knives at his legs, and that they handcuffed him to his sister's bed and told him to watch his sister while she was sleeping. Murphy testified that the boy's fear of Mother and Father was so terrible that once, when she took another foster child to DCS for a family visit, the boy hid under the seat of her car because he was afraid that Mother and Father were coming to get him. She also stated that the boy would fight with other children when he first came to live with her, but that he was now better at playing with other children.

Murphy testified that the boy told her that Mother and Father often whipped his sister with a belt when she soiled her pants. Murphy said that the girl often had nightmares and would urinate on herself when disciplined. When Murphy first shampooed the girl's hair, she screamed, because she said that Mother would put soap in her eyes to make her cry. Now, when Murphy shampooed the girl's hair, she told Murphy, "You're the good mommy that don't put it in my eyes." Since the girl had come to live with Murphy and her husband, her nightmares had diminished and she no longer urinated or soiled her pants when disciplined.

Murphy stated that both children had bonded with her and with her husband, and that the boy had referred to them as mom and dad since he first came to their home. She said that the girl sometimes referred to them as mom and dad. She testified that the children had bonded well with her three natural children, and that she and her husband were willing to adopt both of them.

Betsy Dunn, a DCS investigator, testified at the hearing. Dunn stated that when she interviewed Mother in June 1997, Mother admitted handcuffing her son, binding his arms and legs together with duct tape, and leaving him home alone. Mother said that she tied him up because they could not find a babysitter for him. When Dunn asked her what her son could have done in the event of a fire, Mother commented, "[w]ell, you got me on that one." When Dunn asked Mother about the bruises and marks on her son's face, Dunn said that Mother laughed. Mother explained that her son had slipped in the bathtub, and was just "bobbing around and laughing" when he bruised his face. When Dunn told Mother that that this was not funny, Mother responded, "[w]ell, it is funny if you think about it." Dunn testified that Father admitted he knew the boy was left at home alone, but that Father did not admit that he witnessed Mother restraining or beating her son. Dunn said that she conducted interviews with several relatives, teachers, and others who had contact with the family, and that she concluded that the boy had suffered severe physical abuse.

Dunn testified that DCS developed permanency plans for both children, and that the requirements were the same for Mother and Father. She stated that neither Mother nor Father completed parenting classes under the plan, and neither submitted any proof that they had enrolled in mental health treatment. Dunn said that neither Mother or Father had accepted responsibility for their actions. Dunn testified that, in her opinion, the conditions leading to the children's removal from Mother and Father's home still existed. She stated that neither Mother nor Father had acknowledged their abuse or shown any remorse for their actions toward the children. April Norrod, a DCS case manager, testified that Father had written letters to his daughter while he was incarcerated, to try to make sure that she did not forget him. Neither Mother nor Father presented any proof at the hearing.

On April 3, 2000, the trial court entered a written order terminating Mother's and Father's parental rights. In its order, the trial court stated that it found sufficient evidence that Mother and Father had abandoned both children, that Mother and Father had failed to satisfy the requirements under the permanency plans developed by DCS, that the conditions leading to the children's removal from the home still existed and were likely to continue, subjecting the children to more harm if they were returned to their parents' custody, and that there was little chance the conditions would be remedied. The trial court noted that Father had not taken any responsibility for his role in abusing the children. The trial court denied Mother's and Father's motion to exclude their convictions for aggravated child abuse, and admitted the convictions as proof sufficient to show statutory grounds for the termination of parental rights under Tennessee Code Annotated §§ 36-1-113(g)(4) through 36-1-113(g)(6) (Supp. 2000). The trial court found that termination of Mother's and Father's parental rights was in the children's best interest. From this order, Mother and Father now appeal.

On appeal, Mother argues that the trial court erred by admitting proof of her conviction for aggravated child abuse when the denial of her petition for post-conviction relief was on appeal. She argues that the trial court erred by finding clear and convincing evidence of the statutory grounds for termination of parental rights under Tennessee Code Annotated §§ 36-1-113(g)(4) through 36-1-113(g)(6), because proof of her conviction for child abuse was improperly admitted. Father joins in Mother's argument, even though he did not file a petition for post-conviction relief regarding his conviction for child abuse. Father argues that the weight of the evidence does not support the trial court's decision because there was no direct evidence that he abused the children, only his "best interest" guilty plea to aggravated child abuse.

Parents have a fundamental right in the care, custody, and control of their children. *See Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972); *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994). This fundamental right is not absolute, however, and may be terminated in certain limited circumstances. *See In re Swanson*, 2 S.W.3d 180, 187-88 (Tenn. 1999). The circumstances under which parental rights may be terminated are set forth in Tennessee Code Annotated § 36-1-113. Section 36-1-113(c) states that termination of parental rights must be based on:

> (1) A finding by the court by clear and convincing evidence that the grounds for termination or [sic] parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c) (Supp. 2000). The grounds for termination include:

(1) Abandonment (section 36-1-113(g)(1));

(2) Substantial noncompliance with the child's permanency plan (section 36-1-113(g)(2));

(3) Removal of the child for a period of six months, where the conditions that led to the child's removal persist and there is little likelihood they will be soon remedied (section 36-1-113(g)(3));

(4) The parent has been found to have committed severe child abuse (section 36-1-113(g)(4));

(5) The parent has been sentenced to more than two years' imprisonment for conduct against the child or the child's sibling (section 36-1-113(g)(5)); and

(6) The parent has been confined in a correctional facility for a criminal act under a sentence of ten or more years at a time when the child is under eight years old (section 36-1-113(g)(6)).

Tenn. Code Ann. §§ 36-1-113(g) through 36-1-113(g)(6) (Supp. 2000).

Regardless of whether Mother's or Father's criminal convictions were properly admitted into evidence, there was ample evidence supporting the termination of both Mother's and Father's parental rights based on other grounds. There was clear evidence presented at trial of abandonment, the fact that the children had been removed for six months and the conditions that led to removal persisted and were unlikely to be soon remedied, and substantial noncompliance with the children's permanency plans. Considering the horrible conditions under which the children were removed from the parents' custody, termination of Mother's and Father's parental rights is without question in the best interest of these children. We find no error in the trial court's termination of both Mother's and Father's parental rights.

The decision of the trial court is affirmed. Costs of this appeal are taxed to the appellants, S.S.S. and J.S., and their surety, for which execution may issue if necessary.

<br>

_____

HOLLY KIRBY LILLARD, JUDGE