IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 3, 2001 Session

## IN THE MATTER OF:  A.M.B., D.O.B. 6-13-95, A CHILD UNDER EIGHTEEN (18) YEARS OF AGE

Appeal from the Juvenile Court for Putnam County
No. 162-TC     John P. Hudson, Judge

No. M2000-01130-COA-R3-CV - Filed June 1, 2001

The only question involved in this appeal is whether it was in the best interests of a minor child to terminate the parental rights of the child's mother.  The Juvenile Court of Putnam County found that fact against the mother.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and J. S. DANIEL, SP. J., joined.

Mary Dee Allen, Cookeville, Tennessee, for the appellant, R.B.

Paul G. Summers, Attorney General and Reporter; Douglas Earl Dimond, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

**I.**

R.B. a sixteen-year-old unmarried woman, gave birth to a male child, A.M.B., on June 13, 1995.  In February of 1997 R.B. married A.F.  Approximately one week later Putnam County paramedics responded to an emergency call and found A.M.B. near death.  An examination revealed injuries to the child that were consistent with severe child abuse that had occurred over several days. R.B. said the child had fallen down the stairs and had the flu.

The State Department of Children's Services (DCS) petitioned the Juvenile Court of Putnam County for custody of the child based on medical opinions that his injuries were the result of abuse. A.F., the stepfather, ultimately entered a guilty plea and received an eleven year prison sentence for his part in the abuse.  R.B. entered a best interest plea to child abuse and received a four year suspended sentence.

In March of 1997 DCS developed a plan of care to help R.B. obtain custody of A.M.B. Her responsibilities included attending counseling sessions to address three issues: the failure to protect A.M.B., the failure to obtain medical treatment for him, and who was the perpetrator. R.B. completed a parenting class, but the class did not address the issue of child abuse. She attended other counseling sessions sporadically, although the fault for the irregular schedule was not entirely hers. The critical fact that emerged from these sessions, however, was her failure to identify A.F. as the perpetrator of the abuse. Although she divorced A.F. in January of 1999, R.B. continued to be ambivalent about whether he had actually abused the child. As late as April of 1999 R.B. spoke fondly of A.F. and how loving and caring he had been to the boy. At times she maintained that he had been hurt in the fall. At other times she conceded that it was possible A.F. had been the perpetrator.

**II.**

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *Nale v. Robertson*, 871 S.W.2d 674 (Tenn. 1994). To terminate that right the State must show by clear and convincing evidence that grounds exist for the termination and that it is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c)(1)(2); *In Re Drinnon*, 776 S.W.2d 96 (Tenn. Ct. App. 1988). One of the grounds listed in the statute is severe child abuse. Tenn. Code Ann. § 36-1-113(g)(4). R.B. does not deny that the State has met that requirement by clear and convincing evidence. She does attack the proof used to establish the fact that termination of her parental rights is in the best interest of the child.

In making a best interest decision the legislature has established some factors for the courts to consider.

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. 36-1-113(i).

After hearing the proof, the trial judge made the following findings of fact:

The Court finds that the Defendant, R.B.F., has willfully abandoned the minor child, A.M.B., in that for the four (4) months following removal DCS has made reasonable efforts to assist the parent in establishing a suitable home for the child, but the parent has made no reasonable effort to provide a suitable home and has demonstrated a lack of concern for the child to such a degree that it appears unlikely that she will be able to provide a suitable home at an early date; that she has been substantially non-compliant with the statement of responsibilities in the permanency plan in that she has not successfully completed mental health counseling that addressed the issues of her failing to protect the child from severe abuse, failing to obtain timely medical treatment for the child and identification of the perpetrator of severe abuse against the child; that the child has been removed from the custody of the parent more than six (6) months; that the conditions that led to the child's removal still exist or other conditions exist which would in all probability subject the child to further neglect or abuse if returned home, in that R.B.F. has not successfully completed mental health counseling and has never taken responsibility for her role in this child's severe abuse and has not taken responsibility for her failure to obtain timely medical treatment for this child, which almost resulted in this child's death; there is little likelihood that these conditions will be remedied at an early date so that the child could be returned to the Defendant in the near future; that the continuation of the parent/child relationship greatly diminishes the child's chances of early integration into a stable and permanent home; that she has committed severe child abuse as defined by T.C.A. 37-1-102 against A.B. by either severely abusing the child or failing to protect the child from severe abuse and by neglecting to obtain timely medical treatment for this severely injured child, which almost result in this child's death; that she has been sentenced to more than two (2) years' imprisonment for conduct against A.B. which is found to be severe child abuse; that A.B. has adjusted well in his foster home, has bonded with the foster parents, who are willing to adopt him if he becomes available for adoption and is in great need of permanency as soon as possible according to his mental health counselor; and it is, therefore, in the best interest of said child and the public that all of the Defendant's parental rights to said child be forever terminated and that the complete custody, control, and guardianship

of said child should now be awarded to the State of Tennessee, Department of Children's Services, with the right to place said child for adoption and to consent to such adoption in loco parentis.

R.B. does not attack the findings directly; her chief complaint is that DCS did not provide her with proper counseling. In her brief she argues that "[T]hrough no fault of her own [she] was never able to establish any type of relationship with any counselor." One counselor, however, who met with R.B. from December of 1998 to May of 1999 testified that R.B. never acknowledged that she hurt the child or that she would have allowed anyone else to do so. She repeatedly went back to her story that he fell down some steps the day before, that she had a dental appointment on the day he became critically ill, and that it was not until about 10:00 p.m. when he stopped breathing that she knew he was in acute distress. In light of the medical evidence of the child's injuries, this view of what happened hardly seems rational, and the counselor testified that the failure to acknowledge what actually happened would pose a great danger to the child if he were to be returned to R.B.

We think the evidence sustains the trial judge's finding that the State used reasonable efforts to provide counseling to R.B.[1]

Having crossed that barrier we think the evidence is clear and convincing that the best interest of the child will be served by terminating R.B.'s parental rights. He has now been in State custody for four years, and he is at a critical stage, the early part of his education. He needs the stability that only a family can provide. If R.B. has been unable to come to terms with her role in the events that led to the child's removal, there is no future in sight for the child as long as she has a parental role.

The judgment of the court below is affirmed and the cause is remanded to the Juvenile Court of Putnam County for any further proceedings that may be necessary. Tax the costs on appeal to R.B.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

---

[1]The State contends that they were not under an obligation to provide counseling to R.B. because her abuse of the child amounted to "aggravated circumstances" under Tenn. Code Ann. § 36-1-102 (48). The requirement of making reasonable efforts to preserve and reunify families is removed under these circumstances by Tenn. Code Ann. § 37-1-166(g)(4)(A). We are not content to base our decision on that statute, however, since the State did establish a program designed to reunify R.B. and the child.

-4-