IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 10, 2004 Session

LINDA OTTINGER, ET AL. v. SHELLY EVANS OTTINGER

Appeal from the Circuit Court for Hamilton County
No. 01-D-1899    Jacqueline E. Schulten, Judge

No. E2003-02893-COA-R3-CV   Filed July 21, 2004

Linda Ottinger and Marion Ottinger ("Plaintiffs") are the paternal grandparents of H.O. ("the Child"). The Child's father died in 2000. Plaintiffs sought visitation with the Child. This visitation was opposed by the Child's mother, Shelly Evans Ottinger ("Defendant"). Plaintiffs filed a petition to obtain grandparent visitation under Tenn. Code Ann. § 36-6-306. After trial, the Trial Court held, *inter alia*, that the Child has had a significant existing relationship with the Plaintiffs and the loss of that relationship presents the danger of direct and substantial harm to the Child. The Trial Court granted Plaintiffs visitation. Defendant appeals. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., E.S. joined, and CHARLES D. SUSANO, JR., J., filed a separate concurring opinion.

Marvin Berke, Chattanooga, Tennessee, for the Appellant, Shelly Evans Ottinger.

Sherry B. Paty and Randall D. Larramore, Chattanooga, Tennessee, for the Appellees, Linda Ottinger and Marion Ottinger.

# OPINION

## Background

Plaintiffs are the paternal grandparents of the Child who was born in July of 1999. The Child's father and the Defendant were married when the Child's father died in April of 2000. Plaintiffs saw the child once or twice a week every week from the time of his birth until October of 2001, and would occasionally babysit him. They continued to see the Child with the same frequency after the death of the Child's father until the fall of 2001, when Defendant chose to decrease the frequency of the visitations.

In October of 2001, after problems developed between Plaintiffs and Defendant, Plaintiffs filed a petition for grandparent visitation under Tenn. Code Ann. § 36-6-306. The case proceeded to trial. Linda Ottinger testified they filed the petition because Defendant told them if they "didn't like the way she was doing things, then get a lawyer." They took her advice and did so. After the petition was filed, Defendant refused to allow Plaintiffs to see the Child until the court appointed guardian ad litem arranged for some visitations. However, by the time of trial, Plaintiffs had not seen the Child for approximately fifteen months.

At trial, Plaintiffs presented, among other testimony, the expert witness testimony of Dr. Ronald L. Wigley, a clinical psychologist. Dr. Wigley met with Plaintiffs in February of 2003, and spent about an hour and a half or two hours talking to them. Dr. Wigley never met or spoke with the Child or Defendant.

Dr. Wigley opined it would harm a child if he or she didn't get to visit with grandparents. However, when Dr. Wigley was asked if he was talking specifically about the Child or in general terms, he responded:

> I suppose it has to be both. I have not had the opportunity to meet with [the Child], so I don't know the child and I don't know, you know, what specific needs the child has at this time. I can only really talk about it in generalities based on having dealt with children that have been in this sort of situation before in which they have lost a parent and, you know, the necessity or the need of the child I think to have that - - continue to have that contact with the whole family regardless of whether it's the mother that was deceased or the father that was deceased. . . .

When asked about possible emotional or psychological problems that could result if the Child were denied a relationship with Plaintiffs, Dr. Wigley replied:

> Obviously I can't speak with absolute certainty and not having seen the child, not knowing the child, but when children go through that kind of loss, and again, I'm speaking generalities, when they go through that kind of loss and also lose access to,

you know, part or all of the extended family, it just - - the problems down the road have to do with, you know, depression, anxiety . . . .

Dr. Wigley admitted that he was talking in generalities and could not confine his opinions to this case. Dr. Wigley stated "I will say up front, I cannot say in terms of this child, since I have not met this child, I don't know how this child conceptional wise is in the absence of his grandparents in his life." Dr. Wigley stated "If I were going to make a specific opinion directed at the child, yeah, I would want to see the child." Dr. Wigley also stated:

In that I have not had contact with the child, obviously, I cannot speak specifically for all of that child's needs. Now, there may be needs that the child has that I'm not aware of that are specific - - that are specifically his own needs. But in general, and the question is am I speaking in generalities, obviously, for the most part that's what I have to speak in, okay, about what, in my opinion, in my professional opinion, what is in the best interest of the children in general.

The Trial Court entered an order October 30, 2003, finding and holding, *inter alia*, that Plaintiffs had frequent visitation with the Child for a period of not less than one year and:

That the child has had a significant existing relationship with the grandparents; that the loss of the relationship is likely to occasion severe emotional harm to the child; and . . ., that the child has had a significant existing relationship with the grandparents and a loss of the relationship presents the danger of other direct and substantial harm to the child.

The Trial Court further held that it was in the best interest of the child to have visitation with the Plaintiffs. The Trial Court also discussed Dr. Wigley's testimony stating:

What he told us was what everybody knows. It's very important for a child to have knowledge and association with all members of their family, both sides. That facilitates the child knowing who they are and who they come from. And this Court has always found that short of somebody being an ax murderer on one side of the family or the other, or a drug dealer or something.

This Court tries to facilitate a relationship if at all possible.

The Trial Court awarded Plaintiffs visitation with the Child. Defendant appeals to this Court.

**Discussion**

Defendant raises one issue on appeal: whether the Trial Court erred in awarding grandparent visitation when no proof was presented that the lack of grandparent contact would lead

to substantial harm to the Child. Defendant does not contest the constitutionality of Tenn. Code Ann. § 36-6-306, under which the Trial Court awarded the grandparent visitation.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

"Parents, . . . have a fundamental liberty interest in the care and custody of their children under both the United States and Tennessee Constitutions. However, this right is not absolute and the State may interfere with parental rights if there is a compelling State interest." *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994) (citations omitted).

Our Supreme Court held in *Hawk v. Hawk*, a case dealing with grandparent visitation under an earlier version of Tenn. Code Ann. § 36-6-306, that "neither the legislature or a court may properly intervene in parenting decisions absent significant harm to the child from those decisions." *Hawk v. Hawk*, 855 S.W.2d 573, 581 (Tenn. 1993). The *Hawk* Court, by its holding, sought "to avoid the 'unquestioning judicial assumption' that grandparent-grandchild relationships always benefit children, an assumption that overlooks the necessity of a threshold finding of harm *before* the state can intervene in the parent-child relationship." *Id.* (footnote omitted) (emphasis in original).

Our legislature has provided for certain specific circumstances under which grandparents may petition the courts for visitation over the objection of the child's parent or parents. In pertinent part, Tennessee Code Annotated § 36-6-306 now provides:

(a) Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit or chancery court of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:

(1) The father or mother of an unmarried minor child is deceased;

\* \* \*

(b) (1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:

-4-

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

(B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

(2) For purposes of this section, a grandparent shall be deemed to have a significant existing relationship with a grandchild if:

\* \* \*

(C) The grandparent had frequent visitation with the child who is the subject of the suit for a period of not less than one (1) year.

(c) Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered. . . .

Tenn. Code Ann. §36-6-306 (2003).

This Court discussed the substantial harm standard in *Ray v. Ray*, stating:

The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (discussing the substantial harm standard as applicable to a custody dispute) (footnotes omitted).

In this case, the Child's father was deceased and the Child's mother opposed allowing Plaintiffs visitation. Therefore, Plaintiffs had the right to petition the court and obtain a hearing under Tenn. Code Ann. § 36-6-306 in an attempt to obtain visitation. The case was tried and the Trial Court found and held:

> That the child has had a significant existing relationship with the grandparents; that the loss of the relationship is likely to occasion severe emotional harm to the child; and . . ., that the child has had a significant existing relationship with the grandparents and a loss of the relationship presents the danger of other direct and substantial harm to the child.

Defendant argues on appeal that Plaintiffs failed to prove the Child would suffer substantial harm by loss of contact with Plaintiffs. Defendant's appellate brief states: "The only proof regarding harm to the child emanated from the psychologist retained by the plaintiffs. Yet the psychologist had never even seen the minor child. As he admitted repeatedly, his testimony was general, and he could not apply to this particular family situation." We agree.

In this case, a thorough review of the record reveals that the evidence preponderates against the Trial Court's finding that Plaintiffs satisfied their burden of showing a danger of substantial harm to the Child. Plaintiffs, obviously, testified they believed there was a danger of harm if visitation were not granted. Defendant and her witnesses, equally as obviously, testified there was no such danger of harm. What Plaintiffs present as the dispositive evidence, however, is the testimony given by their expert witness, Dr. Wigley. Dr. Wigley testified that he believed there was a danger of harm if a child did not get to visit with his grandparents. However, Dr. Wigley admitted that he was testifying in generalities as to all children who had lost a parent and did not get to visit with grandparents. Dr. Wigley never met with or spoke with either the Child or Defendant. Dr. Wigley admitted that he did not know what the Child's actual needs or feelings were, and that he could not give an opinion specific as to the Child.

A finding of a presence of a danger of substantial harm to the Child based upon the evidence in this record is contrary to the preponderance of the evidence and does not meet the standard set out in Tenn. Code Ann. § 36-6-306 and the current case law. The statutory standard requires that the petitioner prove a danger of substantial harm to the specific child with whom visitation is sought, not just to children in general. To hold otherwise would result in a presumption that all children suffer substantial harm by the denial of grandparent visitation which would leave only a best interest of the child analysis to be made by the court. Such a presumption is what our Supreme Court held unconstitutional in *Hawk* and would be contrary to the requirements of Tenn. Code Ann. § 36-6-306. *Hawk*, 855 S.W.2d at 581. Dr. Wigley candidly admitted that his testimony dealt with "generalities" about what, in his professional opinion, "is in the best interest of the children in general." In short, Dr. Wigley admitted that he could not give a "specific opinion directed at the [C]hild", and he did not do so.

Plaintiffs failed to prove a danger of substantial harm to the particular child with whom visitation is sought. There is no evidence in the record to support a finding of "a real hazard or danger that is not minor, trivial, or insignificant" to the Child should visitation with Plaintiffs be denied. *Ray*, 83 S.W.3d at 732. Nor is there any evidence to support a finding that harm is "sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not." *Id.*

The Trial Court engaged in the type of presumptive analysis that our Supreme Court sought to avoid with the *Hawk* decision. *Hawk*, 855 S.W.2d at 581. The Trial Court stated that Dr. Wigley simply told them what everybody knows, i.e., that it is important for a child to know his grandparents. The Trial Court also noted that it attempts to facilitate family relationships, short of someone being an ax murderer or a drug dealer. The Trial Court clearly was considering what would be in the best interest of the Child. However, Plaintiffs failed first to make a showing of a danger of substantial harm to the Child sufficient to meet the threshold requirement. Without such a showing, the best interest test never should have been reached. The initial question is not whether Defendant's decision concerning the Child's visitation or lack of visitation with Plaintiffs is wise or unwise or even whether it is in the best interest of the Child, but instead is whether the decision creates a danger of substantial harm to the Child. Certainly in grandparent visitation cases such as this one, "neither the legislature nor a court may properly intervene in parenting decisions absent significant harm to the child from those decisions." *Id.* Subject to the limitations of Tenn. Code Ann. § 36-6-306, a parent is free to decide that his or her child will not have contact or visitation with the grandparents. Absent the grandparents being able to satisfy the requirements of Tenn. Code Ann. § 36-6-306, the courts may not intervene with this decision by the parent.

As Plaintiffs failed to prove a danger of substantial harm to the Child as required by Tenn. Code Ann. § 36-6-306 and case law, we reverse the Trial Court's October 30, 2003, order granting Plaintiffs visitation with the Child and dismiss Plaintiffs' complaint.

## Conclusion

The judgment of the Trial Court is reversed, Plaintiffs' complaint is dismissed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellees, Linda Ottinger and Marion Ottinger.

_____
D. MICHAEL SWINEY, JUDGE