IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 2, 2018

**IN RE BENTLEY D.**

**Appeal from the Circuit Court for Washington County**
**No. 34545     James E. Lauderback, Judge**



**No. E2016-02299-COA-R3-PT**

Father appeals the trial court's termination of his parental rights on the ground of wanton disregard for the child's welfare prior to the father's incarceration.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Lawrence Scott Shults, Johnson City, Tennessee, for the appellant, David D.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Melissa R. ("Mother") and David D. ("Father") are the biological parents of Bentley D., who was born in June 2012.  Father was incarcerated with the Tennessee Department of Correction at the time of the child's birth.  Mother married Aurelio G. ("Stepfather") in February 2014.

On June 26, 2015, Mother and Stepfather filed a petition to terminate Father's parental rights and to allow Stepfather to adopt Bentley.  The petition alleged as grounds:

> [F]ather has never paid support for the child within the prior four months of this petition, nor has he ever paid any support although he has been incarcerated from the date of the child's birth to the present time, and that respondent within the prior four months has not attempted to call petitioner mother to check as to the welfare of this child nor has he ever sent this child a letter or card for petitioner mother to read to the child since an October

2013 letter and a drawn picture for Bentley to color in June, 2013. Although respondent did ask about this child to petitioner Melissa [R.] on February 24, 2014, he stated on that date that he wished to surrender his parental rights to the child. Grounds exist for termination of the father's parental rights on the basis of abandonment.

Father filed an answer opposing the termination of his parental rights in which he alleged that Mother told him to stop writing and that he "made several attempts to check on my child" but the mail came back "return to sender" or he never received a response from Mother. Father further stated that Mother "moved four times in two years." The trial court appointed a guardian ad litem for the child and an attorney for Father.

In an amended answer filed on October 23, 2015, Father raised a number of defenses, including the defense that Mother's petition failed to state a claim upon which relief could be granted. Father filed a motion to dismiss on October 29, 2015, based upon Mother's failure to state a claim upon which relief could be granted. Mother filed a response in opposition to the motion to dismiss. The motion was heard on May 23, 2016. The trial court found that Mother's petition did not comply with Tenn. Code Ann. § 36-1-113(d)(3)(A)(i)[1] or Tenn. Code Ann. §§ 36-1-113(d)(3)(C)(ii) and (iii).[2] Although the trial court found that, when taken together, these defects made the petition defective, the trial court determined that the defects were not fatal. Upon Mother's oral motion, the trial court gave her additional time to file an amended petition to correct the defects. The trial court further stated: "The petitioners are also ORDERED to amend their Petition to more fully state, describe and allege the ground of abandonment, with particular reference to the definition of abandonment set out in T.C.A. § 36-1-102."

---

[1] Tennessee Code Annotated section 36-1-113(d)(3)(A)(i) requires a petition to include a verified statement that: "The putative father registry maintained by the department has been consulted within ten (10) working days of the filing of the petition and shall state whether there exists any claim on the registry to the paternity of the child who is the subject of the termination or adoption petition."

[2] Tennessee Code Annotated sections 36-1-113(d)(3)(C)(ii) and (iii) require the petition to state:

(ii) The child will be placed in the guardianship of other person, persons or public or private agencies who, or that, as the case may be, shall have the right to adopt the child, or to place the child for adoption and to consent to the child's adoption; and

(iii) The parent or guardian shall have no further right to notice of proceedings for the adoption of the child by other persons and that the parent or guardian shall have no right to object to the child's adoption or thereafter, at any time, to have any relationship, legal or otherwise, with the child.

On March 27, 2016, Mother filed a pleading entitled "Amendments to Petition" that included the omitted provisions specified by the trial court and the following paragraph regarding grounds:

> Petitioners further allege an additional act of abandonment of the child by the respondent, that being that prior to his incarceration in the Tennessee Department of Corrections, respondent committed acts in wanton disregard for the rights of this child. Specifically, respondent had just served thirty days upon a violation of probation for his prior Washington County Tennessee felony convictions, when he embarked on an additional crime spree involving eight auto burglaries and credit card fraud, knowing at the time that petitioner . . . was pregnant with his child the subject of this petition. Therefore he was sentenced on the prior felonies and the new felonies to incarceration in the Tennessee Department of Corrections, wherein he still resides serving the sentences in one of their facilities wherein he was incarcerated when this cause was initially filed. Petitioners as well rely on their prior allegation of abandonment that respondent failed to send mail on a regular basis to the child or to inquire about the child on a regular basis within four months of the petition being filed.

On June 22, 2016, Father filed an answer denying these allegations and demanding strict proof; he stated that he was scheduled to be released from prison before June 30.

The final hearing was held on October 27 and 28, 2016. The court heard testimony from Mother, Stepfather, a friend, maternal aunt, maternal grandmother, Father, and paternal great-grandmother. The trial court discussed the statutory ground of failure to pay child support during the four months preceding the parent's incarceration pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv). Because the child in this case was not born until after Father's incarceration, the trial court determined that this ground was not applicable. The trial court then found that Father's parental rights were subject to termination for abandonment by wanton disregard prior to incarceration pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv) and that termination was in the best interest of the child. After the expiration of any appeal, the court stated, the petitioners could proceed with their adoption petition. Father appealed.

Father argues on appeal that the trial court erred: (1) in failing to find Mother's petition deficient under the Rules of Civil Procedure, (2) in using an improper time window when considering the ground of wanton disregard, and (3) in finding sufficient evidence to justify termination for wanton disregard.

STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (quoting *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). This right is not absolute, however. If a compelling state interest exists, the state may interfere with parental rights. *Nash-Putnam*, 921 S.W.2d at 174-75 (quoting *Nale*, 871 S.W.2d at 678). Our legislature has enumerated the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g). The existence of any one of the enumerated grounds will support a termination of parental rights. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because terminating a parent's fundamental parental rights has severe consequences, termination cases require a court to apply a higher standard of proof. *State Dep't of Children's Servs. v. A.M.H.*, 198 S.W.3d 757, 761 (Tenn. Ct. App. 2006). Consequently, a court must determine by clear and convincing evidence both that grounds for termination exist and that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted)).

In light of the heightened standard of proof required in termination of parental rights cases, we must adapt the customary standard of review established by Tenn. R. App. P. 13(d). *Id.* In accordance with Tenn. R. App. P. 13(d), we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. *Id.* Next, we must determine whether the facts establish the existence of one or more grounds for termination by clear and convincing evidence. *In re M.J.B.*, 140 S.W.3d at 654.

ANALYSIS

I.  Sufficiency of petition.

Father's argument here is that Mother's petition is deficient because it fails to comply with Tenn. R. Civ. P. 9A, which states:

In addition to meeting all other applicable rules governing the filing of pleadings, any complaint or petition seeking a termination of parental rights shall contain the following notice: "Any appeal of the trial court's final

disposition of the complaint or petition for termination of parental rights will be governed by the provisions of Rule 8A, Tennessee Rules of Appellate Procedure, which imposes special time limitations for the filing of a transcript or statement of the evidence, the completion and transmission of the record on appeal, and the filing of briefs in the appellate court, as well as other special provisions for expediting the appeal. All parties must review Rule 8A, Tenn. R. App. P., for information concerning the special provisions that apply to any appeal of this case."

Neither Mother's original petition nor the amendment contains this notice. On this basis, Father argues, the petition is defective and should have been dismissed.

Father cites *In re Natalie R.C.*, No. E2011-01185-COA-R3-PT, 2011 WL 4924170 (Tenn. Ct. App. Oct. 18, 2011), in support of his position. We find that the case does not, however, support dismissal. In *In re Natalie R.C.*, the termination petition had multiple defects, the omission of the Tenn. R. Civ. P. 9A notice being one of them. *In re Natalie R.C.*, 2011 WL 4924170, at *2-4. The appellate court found that all of the deficiencies together made the petition defective, but also noted that "[p]erhaps any one of the deficiencies alone might have constituted harmless error." *Id.* at *5. Moreover, the appellate court determined that the appropriate remedy was not dismissal. *Id.* Rather, it held that "[t]hese defects are such that they can be corrected by [petitioner] and her current attorney if given the opportunity, and they choose to do so." *Id.* The court vacated the trial court's judgment and remanded for further proceedings. *Id.*

In the present case, we find no evidence that the petition's omission of the Tenn. R. Civ. P. 9A notice prejudiced Father and conclude that this omission constitutes harmless error.

II. Wanton disregard.

The trial court terminated Father's parental rights based on only one ground, wanton disregard pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv), which defines "abandonment" for purposes of the termination of parental rights, in pertinent part, as follows:

A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, *or the parent or guardian has engaged in*

*conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.*

(Emphasis added). The wanton disregard ground is not limited to the four months immediately preceding the parent's incarceration. *In re Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005). The statutory language states, however, that the actions must occur "prior to incarceration." Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Jeremiah N.*, No. E2016-00371-COA-R3-PT, 2017 WL 1655612, at *7 (Tenn. Ct. App. May 2, 2017). In the context of this provision, "child" includes the period of pregnancy. *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015); *see also In re Jamazin H.M.*, No. W2013-01986-COA-R3-PT, 2014 WL 2442548, at *9 (Tenn. Ct. App. May 28, 2014). This court has previously stated that "a person cannot disregard or display indifference about someone whom he does not know exists." *In re Anthony R.*, 2015 WL 3611244, at *3. Thus, the wanton disregard provisions "must be construed to require that the father has knowledge of the child at the time his actions constituting wanton disregard are taken." *Id.*; *see also In re Jeremiah N.*, 2017 WL 1655612, at *7.

The trial court made the following factual findings related to its later conclusions regarding wanton disregard:

> 9) Father learned that Mother was pregnant with his child by at least January 19, 2012, if not before;
> . . . .
> 11) Father has a criminal history and had been released from Washington County Detention Center on approximately December 21, 2011. He was returned to jail in February, 2012, on a violation of probation warrant. Father admitted to lying to his probation officer about performing his community service work and also lied to his probation officer about obtaining his GED;[3]
> 12) On January 30, 2013, Father entered a guilty plea in Washington County, Tennessee, Criminal Court to seven counts of auto burglary. According to the certified copies of the judgment from Washington County Criminal Court (Ex. 1), these offenses occurred between February 11, 2012, and February 18, 2012. In addition, he pled guilty to theft over $500.00. He was sentenced to two years in prison, consecutive to his remaining time on his prior conviction for felony reckless endangerment;
> . . . .
> 16) Father was released from prison on June 27, 2016, and has not paid child support since his release from confinement;

---

[3] According to Father's testimony, these probation violations, and the resulting 30-day confinement, occurred prior to his knowledge of Mother's pregnancy.

17) In the four months prior to the filing of this petition Father did not visit with Child;

18) Father has not seen Child since he was approximately six months old and has not spoken to the Child since the child was approximately one and one-half years old. Father was in jail or confinement during these "visits";

19) In the time period between Father's release from confinement and the trial of this matter, Father did not visit with Child or attempt to visit Child[.]

In concluding that the wanton disregard ground was satisfied in this case, the trial court stated as follows:

In this case, Father's incarceration severely compromised his ability to perform parental duties. Without question, periods of repeated incarceration by Father indicate that he is unfit to care for his child. Father's conduct is found to be in wanton disregard for the welfare of the child and includes ongoing criminal activity, ongoing probation, repeated incarceration, probation violations, failure to support his child and failure to visit his child. Father's repeated incarcerations resulted in his inability to provide prenatal care and expenses for Mother and to also adequately support or supervise Child after his birth. The repeated incarcerations of Father have resulted from longstanding and systemic behavior by Father and leads the Court to the conclusion that, by clear and convincing evidence, Father has exhibited a wanton disregard for the welfare of Child.

Father's first argument with respect to the wanton disregard ground is that the trial court erred in considering the wrong time period. As discussed above, the evidence applicable to the wanton disregard ground should be from the time that Father knew about Mother's pregnancy—January 19, 2012—to his incarceration in February 2012. It appears from the trial court's order that the court considered evidence outside of this time period. The court refers to "repeated incarceration," whereas only one period of incarceration (which began in February 2012) falls within the applicable time period. The court's references to "ongoing" criminal activity and probation suggest current activities or activities during incarceration, either of which falls outside the period applicable to the wanton disregard analysis. Moreover, the trial court's reliance upon Father's alleged failure to support or visit the child is erroneous. Father testified that he went shopping with Mother to buy clothes for the baby to wear home, bought outfits for the child, and went out in the middle of the night to buy food to satisfy Mother's food cravings. Father could not visit the child before he was born, and any failure to visit after his birth occurred after Father's incarceration and, therefore, is not relevant. We agree with Father that the trial court erred in considering evidence outside of the appropriate time period—from the time when Father became aware that Mother was pregnant until his incarceration.

Father's final argument is that the trial court erred in finding that there was sufficient evidence to terminate Father's parental rights on the ground of abandonment by wanton disregard. As discussed above, the trial court considered irrelevant evidence. We must, therefore, determine whether the relevant evidence supports a finding of termination by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546.

During the relevant time period—January 19, 2012, through February 2012—after he was aware of Mother's pregnancy, Father committed seven felony auto burglaries (between February 11, 2012, and February 18, 2012) and one misdemeanor theft ($500 or less). This court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68. In *In re Jeremiah N.*, 2017 WL 1655612, at *6, after learning of the mother's pregnancy in April 2006, the father sold cocaine in August 2006 (for which he was later convicted of possession with intent to distribute crack cocaine); a few months later, he engaged in aggravated domestic assault and resisting arrest, which was also a probation violation. This court determined that there was clear and convincing evidence that father had engaged in conduct that constituted wanton disregard for the child's welfare. *In re Jeremiah N.*, 2017 WL 1655612, at *6.

"'The actions that our courts have commonly found to constitute wanton disregard reflect a "me first" attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child.'" *In re Zane W.*, No. E2016-02224-COA-R3-PT, 2017 WL 2875924, at *8 (Tenn. Ct. App. July 6, 2017) (quoting *In re Anthony R.*, 2015 WL 3611244, at *3). We have concluded that, in the present case, Father's string of criminal behavior constitutes clear and convincing evidence of wanton disregard for the welfare of his child.

III. Best interest.

Having determined that clear and convincing evidence of a statutory ground exists to terminate Father's parental rights, we must next consider whether the trial court properly determined that termination is in the child's best interest. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a ground for termination, the child's interests diverge from those of the parent and the court focuses on the child's best interests. *In re Audrey S.*, 182 S.W.3d at 877. A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878.

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court is to consider the following non-exclusive factors:

- 8 -

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005).

The trial court, in the present case, made the following findings regarding the statutory factors:

1) The Court is unable to make a finding as to whether Father has changed his conduct and circumstances. Father has only been out of prison approximately four months. He is not yet employed. He apparently lives with his grandmother. The Court cannot conclude, from this evidence, whether this factor does or does not favor the Child continuing to have a relationship with his Father;

2) This factor does not apply in this matter as Father never sought social services;

3) Father has not seen or visited with Child since he was six months old. Father was in jail at the time. He has not spoken to Child since Child was approximately 1-1/2 years of age. Father has been out of jail for four months and has not filed any petition nor sought any judicial assistance in seeing or visiting with Child. This factor does not favor Child continuing to have a relationship with Father;

4) The evidence and testimony proves that it is overwhelmingly clear that Father and Child do not have a meaningful relationship. In fact, Father and Child have never had a meaningful relationship. This factor does not favor Child continuing to have a relationship with Father;

5) Mother testified that she wholeheartedly believes a negative effect would be caused upon the Child's emotional and psychological condition by having Father introduced into his life after having no relationship for a period of time. The only father figure Child has known is his Step-Father. This factor does not favor Child continuing to have a relationship with Father;

6) No proof was offered at trial that Father would expose Child to brutality, abuse or neglect. However, there was no testimony as to the condition of Father's home (currently residing with his grandmother). This factor would presumably tend to favor Child continuing to have a relationship with Father.

7) Father did not present evidence of the physical environment of his current residence. However, Father's criminal activity and repeated incarcerations [lead] the Court to believe that the physical environment in Father's current residence would not promote the health and safety of Child. This factor does not favor Child continuing to have a relationship with Father;

8) There was no testimony as to Father's mental or emotional status; and

9) Father has never paid child support to Mother. This factor does not favor Child continuing to have a relationship with Father.

The trial court also discussed "the undisputed fact that Step-Father . . . is apparently in this country illegally and has applied to obtain legal immigration status." Despite the possibility that Stepfather could be deported, the trial court concluded that it was in Bentley's best interest for Father's parental rights to be terminated. The court stated that Stepfather was the only father figure the child had ever known.

There is clear and convincing evidence to support the trial court's determination that termination of Father's parental rights is in the child's best interest.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, David D.

_____

ANDY D. BENNETT, JUDGE