IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 3, 2018

**IN RE LAILONNII J. ET AL.**

**Appeal from the Juvenile Court for Knox County**
**No. 153990     Timothy E. Irwin, Judge**

_____

**No. E2018-01198-COA-R3-PT**

_____

Father appeals the trial court's decision to terminate his parental rights to two children on the grounds of (1) incarceration under a sentence of ten or more years, and the children were under eight at the time the sentence was entered, (2) wanton disregard for the welfare of the children, and (3) failure to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the children, and placing the children in Father's care would pose a risk of substantial harm to the physical and psychological welfare of the children. He further challenges the trial court's finding by clear and convincing evidence that termination of his parental rights was in the best interest of the children. We affirm in part and vacate in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in
Part, Vacated in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Lonnie A. J.

Herbert H. Slatery, III, Attorney General and Reporter, and Amber L. Seymour, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

I. FACTUAL AND PROCEDURAL BACKGROUND

Ebonii W. ("Mother") and Lonnie A. J. ("Father") are the biological parents of LaiLonnii J., born in July 2015, and Laishonnii W., born in March 2017; Mother and Father never married. Although Father was listed on the birth certificate of LaiLonnii

only, he does not dispute being the father of both children. Mother also has a child from a previous relationship who is not involved in this case.

Father has an extensive criminal history. His prior convictions include driving on a revoked or suspended license, evading arrest, simple possession, underage consumption of alcohol, unlawful possession of a weapon, and possession with intent to go armed while under the influence. Although these convictions occurred before the children were born, Father continued to engage in criminal activity after the birth of LaiLonnii in July 2015.

On January 28, 2016, Father was arrested and charged with especially aggravated robbery, simple possession, evading arrest, and criminal impersonation for offenses that occurred in October 2015. He remained incarcerated until he was released on bond on February 3, 2016. While Father was out on bond, Laishonnii was conceived. Unfortunately, Father was arrested again on September 9, 2016, after it was discovered that his bond had been set too low for the charges against him. He then entered a guilty plea to the lesser-included offense of robbery, and the remaining charges against him were dismissed pursuant to the plea agreement. Father has remained incarcerated since his arrest on September 9, 2016. On December 14, 2017, he received a sentence of ten years to be served in the Tennessee Department of Correction.

The Tennessee Department of Children's Services ("the Department" or "DCS") removed the children from Mother's custody in March 2017 after she tested positive for opiates when Laishonnii was born. Following the removal, DCS placed the children in the home of their maternal uncle and aunt, and they have continuously resided there since that time. On December 28, 2017, the trial court adjudicated the children dependent and neglected due to Mother's drug use and Father's incarceration.

The Department filed its petition to terminate Father's parental rights on January 12, 2018.[1] DCS alleged that termination of Father's parental rights was warranted on the grounds of (1) confinement in a correctional or detention facility under a sentence of ten or more years, and the children were under eight years old when the sentence was entered, (2) wanton disregard for the welfare of the children, and (3) failure to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility for the children, and placing the children in his legal and physical custody would pose a risk of substantial harm to the physical and psychological welfare of the children.

---

[1] In a separate proceeding, the Department also sought to terminate Mother's parental rights. Mother voluntarily surrendered her parental rights during the proceedings to terminate Father's parental rights. She is not a party to this appeal.

The trial court heard the matter on June 7, 2018. Father was present at the hearing, and the Department called him as its first witness. He testified that, while waiting to be sentenced for his robbery conviction, he submitted to an assessment to determine whether he would be assigned to a day reporting center as an alternative to going to prison. During the assessment, he reported that he began using cocaine at age twelve and began selling drugs at age thirteen. At the termination hearing, however, he denied ever using cocaine and denied selling drugs at age thirteen. Father stated, "I told some lies when I got interviewed. My ultimate goal was to try to get out [of incarceration]." He admitted to using alcohol and marijuana.

Prior to Father's incarceration, he paid the bills, ensured that the children were fed, and made certain that they were in a safe place. He testified that he loved his children and that he wanted "to get out and do right." In an effort to improve himself while incarcerated, Father has taken a parenting class, participated in Alcoholics Anonymous, and taken several substance abuse classes. According to Father, he had not received any disciplinary infractions since being incarcerated and he would be eligible for parole in 2019 or 2020.

Father agreed that the children needed to be supported, encouraged, and provided for, and he admitted that he could not do these things while incarcerated. Although Father acknowledged that the children's lives should not be put on hold until he is out of prison, he believed that his parental rights should not be terminated. He stated, "I don't feel like it's fair to me not to never ever see my kids again. I don't believe I did that much damage to them, I haven't did nothing." Father testified that it did not matter to him who had custody of the children but that he wanted to remain a part of their lives.

The Department's next witness was Wendy Wittenbarger, the DCS case worker assigned to the case in January 2018. She testified that all contact between Father and the children had to go through DCS, and she had no records showing that Father ever sent any letters, cards, or pictures to the children. Ms. Wittenbarger acknowledged that she did not personally advise Father he could contact the children, but she believed that a previous case worker had informed him how to contact DCS.

Finally, the maternal uncle, Mr. Foster,[2] testified on behalf of the Department. The children have continuously lived with him and his wife since being removed from Mother's custody. Mr. Foster stated that, in addition to the children, his child and the children's half-sibling lived in his home. All of the children "g[ot] along just like normal kids" and related to each other "like a normal family." Both Mr. and Mrs. Foster work, and they are able to provide the care and stability the children need. The Fosters love the children and intend to adopt them if they become available for adoption.

---

[2] The trial court referred to the maternal uncle as "Mr. Foster" in order to protect the identity of the children.

In an order entered on June 13, 2018, including findings of fact and conclusions of law, the trial court determined that three grounds for termination had been proven by clear and convincing evidence: (1) incarceration under a sentence of ten or more years, and the children were under eight at the time the sentence was entered, (2) wanton disregard for the welfare of the children, and (3) failure to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the children, and placing the children in Father's care would pose a risk of substantial harm to the physical and psychological welfare of the children. The trial court further found that there was clear and convincing evidence that termination of Father's parental rights was in the best interest of the children. Father timely appealed.

We consolidate and restate the issues raised by Father on appeal as follows: (1) whether the trial court erred in finding by clear and convincing evidence that grounds existed to terminate Father's parental rights, (2) whether the trial court erred in determining that termination of Father's parental rights was in the best interest of the children, and (3) whether Father received ineffective assistance of trial counsel during the termination proceedings.

## II. STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Although this right is fundamental, it is not absolute and may be terminated in certain situations. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has identified "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

Tennessee Code Annotated section 36-1-113 provides the grounds and procedures for terminating parental rights. First, a petitioner seeking to terminate parental rights must prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Second, a petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The termination of a parent's rights is one of the most serious decisions courts make because "[t]erminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, 2005 WL 1021618, at *6, "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting

Tenn. Code Ann. § 36-1-113(l)(1)). Consequently, a parent has a constitutional right to fundamentally fair procedures during termination proceedings. *In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *2 (Tenn. Ct. App. Jan. 24, 2018) (citing *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016)).

Tennessee law ensures fundamental fairness in termination proceedings by requiring a heightened standard of proof—clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. Before a parent's rights may be terminated, a petitioner must prove both the grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

We review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *In re Serenity B.*, 2014 WL 2168553, at *2. In light of the heightened standard of proof, we must then make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

III. ANALYSIS

I. Grounds for Termination

A.      Incarceration under a Ten-Year Sentence

The trial court relied on Tenn. Code Ann. § 36-1-113(g)(6) as a ground for terminating Father's parental rights. This statute provides that a parent's rights may be terminated if:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Tenn. Code Ann. § 36-1-113(g)(6). When considering Tenn. Code Ann. § 36-1-113(g)(6) as a ground for terminating a parent's rights, a court "need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to

determine whether this ground for termination applies." *In re Audrey S.*, 182 S.W.3d 838, 876 (Tenn. Ct. App. 2005).

Here, the record includes a certified copy of Father's judgment of conviction that expressly states that he received a ten-year sentence for his robbery conviction. There is no dispute that both children were under the age of eight when this sentence was entered. Father argues, however, that he did not actually receive a ten-year sentence. The judgment of conviction states that Father received credit toward the ten-year sentence for the time he spent incarcerated prior the entry of the judgment: January 28, 2016, through February 3, 2016; and September 9, 2016, through December 14, 2017. Father argues that, after calculating these presentence jail credits, he was actually under a sentence of nine years, six months and six days.

With respect to the effect presentence jail credits have on a sentence received, the Tennessee Supreme Court has stated, in pertinent part, as follows:

> Although pretrial jail credits allow a defendant to receive credit against his *sentence* for time already served, awarding . . . pretrial jail credits does not alter the *sentence* in any way, although it may affect the length of time a defendant is incarcerated.

*State v. Brown*, 479 S.W.3d 200, 212 (Tenn. 2015). Therefore, the fact that Father received presentence jail credits does not alter the sentence Father received. He was still incarcerated under a criminal sentence of ten years. The only effect the presentence jail credits may have is on the length of time Father spends incarcerated.

Tennessee Code Annotated section 36-1-113(g)(6) is explicit and absolute. *See In re D.M.*, No. M2009-00340-COA-R3-PT, 2009 WL 2461199, at *3 (Tenn. Ct. App. Aug. 12, 2009). If a parent is confined in any type of facility under a criminal sentence of ten or more years and the child is under the age of eight when the sentence is entered, the conditions of the statute are met and grounds exist to terminate that parent's rights. *Id.* The statute does not "expressly provide that the actual period of confinement must amount to 10 or more years." *In re Chandler M.*, No. M2013-02455-COA-R3-PT, 2014 WL 3586499, at *7 (Tenn. Ct. App. July 21, 2014). Thus, "[i]t does not matter if the parent may serve less than the 10-year sentence," *In re D.M.*, 2009 WL 2461199, at *3, or when the parent served the sentence. *See id.* at *2-3 (terminating a father's parental rights based on Tenn. Code Ann. § 36-1-113(g)(6) even though he had completed his ten-year sentence prior to the termination proceedings).

In the present case, the conditions in Tenn. Code Ann. § 36-1-113(g)(6) were met when the judgment of conviction was entered on December 14, 2017, sentencing Father to ten years imprisonment, and both children were under the age of eight when the sentence was entered. We, therefore, conclude that clear and convincing evidence

supports the termination of Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(6).

## B. Abandonment by Wanton Disregard

We next consider the trial court's termination of Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(1), which provides that a parent's rights may be terminated where the parent abandons the child, as defined in Tenn. Code Ann. § 36-1-102. Pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv), abandonment is defined to include a parent who is incarcerated at the time when the termination petition is filed and who "has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Father argues that the trial court's ruling should be reversed because the court failed to make sufficient findings of fact as to this ground. Specifically, he asserts that the trial court failed to make a finding of fact as to what conduct he engaged in that constituted a wanton disregard for the welfare of the children.

Tennessee Rule of Civil Procedure 52.01 provides, in pertinent part, that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." In determining whether a trial court has complied with Rule 52.01, our Supreme Court has stated:

> There is no bright-line test by which to assess the sufficiency of factual findings, but "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue."

*Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2579, at 328 (3d ed. 2005)). As a result, "[s]imply stating the trial court's decision, without more, does not fulfill [the Rule 52.01] mandate." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012).

Specific findings of fact and conclusions of law serve three purposes. *Lovlace*, 418 S.W.3d at 34. First, they facilitate appellate review by providing the reviewing court with "a clear understanding of the basis of a trial court's decision." *Id.* Second, these findings clarify which issues the trial court is deciding so that the doctrines of estoppel and res judicata may be applied in future cases. *Id.* at 35. Third, this requirement serves "'to evoke care on the part of the trial judge in ascertaining and applying the facts,'" reducing the likelihood a case will be appealed. *Id.* (quoting 9C FEDERAL PRACTICE AND PROCEDURE § 2571, at 221-22).

To support his argument that the trial court failed to make sufficient findings of fact, Father points to the court's oral ruling made at the conclusion of trial. Father fails to address the written order the trial court entered shortly after its oral ruling. "No principle is better known than that which states that a Court speaks through its orders and decrees entered upon the minutes of the Court." *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). As this court has previously stated, "'[a] judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court . . . .'" *Cunningham v. Cunningham*, No. W2006-02685-COA-R3-CV, 2008 WL 2521425, at *5 (Tenn. Ct. App. June 25, 2008) (quoting *Broadway Motor Co., Inc. v. Fire Ins. Co.*, 12 Tenn. App. 278, 280 (Tenn. Ct. App. 1930)). Therefore, we will consider the trial court's written order, not its oral ruling, to determine whether it made sufficient findings of fact in relation to this ground.

The trial court's written order contains the following relevant findings of fact:

> The Court further finds that prior to his incarceration, [Father] engaged in conduct which exhibits a wanton disregard for the welfare of the children. The crime that led to his current imprisonment was committed when LaiLonnii was just 3 months old. Although [Father] managed to remain in the community for a short period of time, he ended up back in jail in September 2016 and remained there continuously until his transfer to prison. He was in jail when Laishonnii was born; he went to jail just two months after LaiLonnii's first birthday.

These findings of fact show that the trial court found that the robbery Father committed and his repeated incarceration constituted conduct exhibiting a wanton disregard for the welfare of the children. These findings of fact provide a clear understanding of the basis of the trial court's decision. *See Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012). We conclude that the trial court's written order satisfies the requirements of Rule 52.01.

Father next asserts that the trial court erred in terminating his rights based on this ground because DCS failed to prove wanton disregard by clear and convincing evidence. Unlike the willful failure to support and willful failure to visit grounds referenced at the beginning of the statute, the wanton disregard ground is not limited to the four months immediately preceding the parent's incarceration. *In re Audrey S.*, 182 S.W.3d at 871. The wanton disregard provision requires, however, that the conduct occur "prior to incarceration." Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Jeremiah N.*, No. E2016-00371-COA-R3-PT, 2017 WL 1655612, at *7 (Tenn. Ct. App. May 2, 2017).

Although the wanton disregard provision does not make incarceration alone a ground for terminating parental rights, it reflects that "parental incarceration is a strong

indicator that there may be problems in the home that threaten the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866. Therefore, parental incarceration serves:

> as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.

*Id.* Tennessee Code Annotated section 36-1-102(1)(A)(iv) does not define "wanton disregard." This court has repeatedly held, however, that the following types of conduct, alone or in combination, can constitute conduct demonstrating a wanton disregard for a child's welfare: "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child." *In re Audrey S.*, 182 S.W.3d at 867-68. The types of "actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015).

In the context of this provision, "child" includes the period of pregnancy. *Id.*; *see also In re Jamazin H.M.*, No. W2013-01986-COA-R3-PT, 2014 WL 2442548, at *9 (Tenn. Ct. App. May 28, 2014). This court has previously stated that "a person cannot disregard or display indifference about someone whom he does not know exists." *In re Anthony R.*, 2015 WL 3611244, at *3. Thus, the wanton disregard provisions "must be construed to require that the father has knowledge of the child at the time his actions constituting wanton disregard are taken." *Id.*; *see also In re Jeremiah N.*, 2017 WL 1655612, at *7.

On appeal, the Department elected not to defend the wanton disregard ground as it applies to Laishonnii "because the record does not clearly and convincingly reflect whether Father was aware that Mother was pregnant with Laishonnii when the alleged wanton disregard conduct occurred." As a result of the Department's position, we will not review the trial court's findings with respect to this ground as it applies to Laishonnii, and we vacate the trial court's termination of Father's parental rights to Laishonnii based on abandonment by wanton disregard.

The Department asserts that the trial court properly found abandonment by wanton disregard as it applies to LaiLonnii, however. As discussed above, the trial court found that the robbery Father committed and his repeated incarceration constituted conduct demonstrating a wanton disregard for the welfare of LaiLonnii. A thorough review of the record shows that the robbery Father was convicted of and received a ten-year sentence for occurred in October 2015. At the time Father committed the robbery, LaiLonnii was

three months old. Unfortunately, the record contains no evidence that Father had any knowledge of LaiLonnii when he committed the robbery.

With respect to Father's repeated incarceration, the record shows that he was incarcerated from January 28 through February 3, 2016, for the robbery that occurred in October 2015. After being released on bond on February 3, 2016, Father remained in the community for a short period of time, but he was arrested again on September 9, 2016. Father testified that he was arrested on this date because he appeared for a hearing concerning the robbery charge and, during this hearing, it was discovered that his bond had been set too low for the charge against him. Generally, when courts find that a parent's repeated incarceration demonstrates a wanton disregard for the welfare of a child, the repeated incarceration is due to violating probation or committing multiple crimes. *See In re Chase L.*, No. M2017-02362-COA-R3-PT, 2018 WL 3203109, at *13 (Tenn. Ct. App. June 29, 2018) (affirmed termination based on wanton disregard because mother was incarcerated on multiple occasions for different crimes and probation violation); *In re Donte N.*, No. E2013-01617-COA-R3-PT, 2014 WL 201612, at *1-2, *7 (Tenn. Ct. App. Jan. 17, 2014) (affirmed termination based on wanton disregard where father was repeatedly incarcerated for committing multiple crimes during a period of six years); *In re Adoption of Logan A.S.*, No. W2009-02661-COA-R3-PT, 2010 WL 3984712, at *8 (Tenn. Ct. App. Oct. 12, 2010) (affirmed termination based on wanton disregard due to father's multiple incarcerations due to drug-related thefts). Father's repeated incarceration was not for committing additional crimes while out on bond or for violating probation. Rather, he was returned to jail on September 9, 2016, because his bond had been set too low for the robbery charge he was previously incarcerated for in early 2016, and because he could not pay the increased bond amount. In other words, Father's reincareration was for the robbery committed in October 2015. The record contains no evidence of conduct by Father demonstrating a wanton disregard for the welfare of the children other than the robbery committed in October 2015. As discussed above, we have determined that the Department failed to prove that Father had any knowledge of LaiLonnii at the time he committed the robbery.

In light of the foregoing, we conclude that the Department failed to prove by clear and convincing evidence the ground of abandonment by wanton disregard for the welfare of either of the children. We vacate the trial court's termination of Father's parental rights to LaiLonnii based on this ground.

### C. Failure to Manifest an Ability and Willingness to Personally Assume Custody

The trial court also relied on Tenn. Code Ann. § 36-1-113(g)(14) as a ground for terminating Father's parental rights. Pursuant to this ground, a court may terminate parental rights in situations where:

A legal parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14)[3]. Essentially, this ground requires a party seeking termination to prove two elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1), (g)(14). First, a party must prove that the parent failed to manifest both "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). If a party proves only the "ability" criterion or the "willingness" criterion, the requirements of the statute are not met, and this ground may not serve as a basis for terminating parental rights. *In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018). The second element a party seeking termination based on this ground must prove is that placing the children in the parent's "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14).

Here, the trial court concluded that DCS proved the first element by clear and convincing evidence based on its finding that Father "is in prison; he is completely unable to assume responsibility for these children." A thorough review of the record shows that Father was incarcerated from January 28, 2016 through February 3, 2016, and he has been continuously incarcerated since September 9, 2016. He is currently serving a ten-year sentence for a robbery conviction. Father anticipates that he will get out on parole in either 2019 or 2020, but he may be required to serve the entire ten-year sentence. We conclude that a preponderance of the evidence supports the trial court's finding that Father does not currently have the *ability* to assume physical and legal custody or financial responsibility of the children.

The trial court made no specific findings of fact regarding whether Father failed to manifest a willingness to assume physical and legal custody or financial responsibility of the children. An examination of the record, however, shows that DCS presented evidence pertaining to this criterion. Father testified that he loved the children and he "want[ed] to get out and do right." DCS correctly points out that, during his incarceration, Father has not sent any letters, cards, or pictures to the children, which would indicate "willingness." Ms. Wittenbarger admitted, however, that she did not provide Father any information regarding how to contact the Department so he could send the children letters, cards, or pictures. Rather, she merely believed that the previous caseworker contacted Father in prison and provided him with the necessary information.

---

[3] This is the version of the statute in effect when the petition was filed. Tennessee Code Annotated section 36-1-113(g)(14) was amended effective July 1, 2018.

- 11 -

This evidence does not establish by clear and convincing evidence that Father failed to manifest a willingness to assume physical and legal custody or financial responsibility of the children. In light of the foregoing, we conclude that the Department failed to prove the first element of the statutory ground by clear and convincing evidence, and we vacate the trial court's termination of Father's parental rights based on this ground.

## II. Best Interest

Having determined that clear and convincing evidence of at least one statutory ground exists to terminate Father's parental rights, we must next consider whether the trial court properly determined that termination of Father's parental rights is in the best interest of the children. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a ground for termination, the child's interests diverge from those of the parent and the court focuses on the child's best interests. *In re Audrey S.*, 182 S.W.3d at 877. A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* at 877. Because some parental misconduct is redeemable, our termination of parental rights statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interest." *Id.* The facts a court considers in its best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court is to consider the following non-exclusive factors:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re Audrey S.*, 182 S.W.3d at 878, a court is still obligated to consider "all the factors and all the proof." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

Father argues that the trial court failed to make specific findings of fact regarding the best interest factors, citing to the trial court's oral ruling. A careful review of the record, however, shows that the trial court made specific findings of fact regarding the best interest factors in its written order. For the reasons discussed above, this argument is without merit.

Here, the trial court found that the best interest factors weighed in favor of terminating Father's parental rights. Specifically, the court found that Father "ha[d] not made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the children's best interest to be in his home." *See* Tenn. Code Ann. § 36-1-113(i)(1). The evidence does not indicate that Father has any home outside of prison. He has been incarcerated for most of LaiLonnii's life and the entirety of Laishonnii's life. He is

serving a ten-year sentence for a robbery conviction, and there is a possibility that he will be required to serve the entire ten-year sentence. Father testified that he has made efforts to improve himself, such as taking a parenting class, participating in Alcoholics Anonymous, and taking several substance abuse classes. We commend Father's efforts, but they do not negate the fact that he is unavailable to care for the children because he is incarcerated under a ten-year sentence, and there is a possibility he will have to serve the entire length of his sentence.

The trial court also found that, "[d]ue to his conduct, [Father] has not been able to maintain regular visitation or other contact with the children and no meaningful relationship has otherwise been established between [Father] and the children." *See* Tenn. Code Ann. § 36-1-113(i)(3), (4). Although it appears that Father genuinely loves and cares for the children, he has not established a meaningful relationship with them because he has been incarcerated for most of LaiLonnii's life and the entirety of Laishonnii's life.

In addition, the trial court found that Father was "without a healthy and safe physical environment to offer the children" and, "[p]rior to his incarceration, he engaged in criminal activity." *See* Tenn. Code Ann. § 36-1-113(i)(7). Father has a lengthy history of criminal activity and drug and alcohol use. His prior convictions include driving on a revoked or suspended license, evading arrest, simple possession, underage consumption of alcohol, unlawful possession of a weapon, and possession with intent to go armed while under the influence. Moreover, he is currently serving a ten-year sentence for a robbery conviction. In regard to drug use, Father admitted at trial that he used marijuana.

Finally, the trial court found that "[a] change of caretakers and physical environment from their stable, kinship foster home is likely to have a detrimental effect on the children's emotional and psychological condition." *See* Tenn. Code Ann. § 36-1-113(i)(5). LaiLonnii has lived with his maternal uncle and aunt since he was one year old and Laishonnii has lived with them his entire life. The children's half-sibling also lives with them. The Fosters love the children and provide a safe and stable environment for them. The children are happy and doing well. If they become available for adoption, the Fosters want to adopt them.

In light of the foregoing, we conclude that there is clear and convincing evidence to establish that termination of Father's parental rights is in the best interest of the children.

### III. Ineffective Assistance of Counsel

Father next argues that he was denied effective assistance of counsel during the termination proceedings because his trial counsel only met with him twice. In *In re Carrington H.*, the Tennessee Supreme Court held that, although several procedural

safeguards exist to protect a parent's rights during termination proceedings, there is no right to effective assistance of counsel in parental termination cases. *In re Carrington H.*, 483 S.W.3d at 535. The Court explained:

> By refusing to import criminal law post-conviction type remedies, we do not at all disregard the well-established constitutional principle precluding the termination of parental rights except upon fundamentally fair procedures. But this constitutional mandate can be achieved without compromising the interests of children in permanency and safety. "By its very nature, 'due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Heyne v. Metro. Nashville Bd. of Pub. Educ.,* 380 S.W.3d 715, 732 (Tenn. 2012) (quoting *Cafeteria & Rest. Workers Union, Local 473 AFL-CIO v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Tennessee court rules, statutes, and decisional law are already replete with procedures, some previously described herein, designed to ensure that parents receive fundamentally fair parental termination proceedings.
>
> . . . .
>
> . . . Given these existing procedural safeguards, we decline to hold that securing the constitutional right of parents to fundamentally fair procedures requires adoption of an additional procedure, subsequent to or separate from an appeal as of right, by which parents may attack the judgment terminating parental rights based upon ineffective assistance of appointed counsel.

*Id.* at 533, 535.

Father acknowledges the Supreme Court's holding in *In re Carrington H.*, but he argues that we should consider Father's argument anyway because the Supreme Court's decision was "a 3-2 divided opinion." The United States Supreme Court denied a petition for writ of certiorari in *Vanessa G. v. Tennessee Department of Children's Services*, 137 S.Ct. 44 (2016), an attempt to appeal *In re Carrington H.* Therefore, the holding *In re Carrington H.* is final and binding on this court. There is no mechanism for Father to seek relief from the termination of his parental rights based on ineffective assistance of counsel.

Father was entitled to fundamentally fair procedures, however. *In re Carrington H.*, 483 S.W.3d at 533-35. He contends that he did not receive fundamentally fair procedures because he was provided inadequate time to develop a proper defense due to his attorney only meeting with him twice. To support his argument, Father relies on the case *In re Cameron S.H.*, No. E2012-00220-COA-R3-PT, 2012 WL 4045303 (Tenn. Ct.

App. Sept. 14, 2012). In *In re Cameron S.H.*, the trial court terminated the father's parental rights after neither the father nor his appointed counsel appeared at the termination of parental rights trial. *In re Cameron S.H.*, 2012 WL 4045303, at *1. The record showed that counsel did not receive notice of the termination hearing until after entry of the judgment terminating the father's parental rights. *Id.* at *3. On appeal, this court held that the father was entitled to a new trial because the failure to notify the father's counsel "of the termination proceeding affected the substantial constitutional and statutory rights of the father." *Id.*

Father's reliance on *In re Cameron S.H.* is misplaced. Both Father and his appointed counsel appeared at the termination hearing. Although Father asserts that he only met with counsel twice, such an allegation does not evoke constitutional concerns similar to a situation where trial counsel is completely absent from a termination proceeding because he or she was not notified of the proceeding. Moreover, the record on appeal does not reflect how Father was prejudiced by this alleged deficiency. *See Tanner v. Whiteco, L.P.*, 337 S.W.3d 792, 796 (Tenn. Ct. App. 2010) (stating that appellate review is limited to the record on appeal). We conclude that Father has failed to prove that he was deprived of any of his rights related to his representation or to fundamental fairness in the termination proceedings.

## IV. CONCLUSION

We affirm the trial court's decision terminating Father's parental rights based on the ground of incarceration under a sentence of ten or more years, and the children were under the age of eight at the time the sentence was entered. We vacate the trial court's decision terminating Father's parental rights based on the grounds of wanton disregard for the welfare of the children and failure to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the children, and placing the children in Father's care would pose a risk of substantial harm to the physical and psychological welfare of the children. We affirm the trial court's conclusion that it is in the best interest of the children to terminate Father's parental rights, and thus, affirm the trial court's ultimate decision to terminate Father's parental rights to the children. This matter is remanded with costs of appeal assessed against the appellant, Lonnie A. J., for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE